EXHAUSTION  3-24-cv-583
LC/MAL

- Copy OF Complete Administrative Remedy
# 1205982 (CREDIT FOR OFFICIAL DETENTION)
   - copout
   - BP8 & Response
   - BP9 & Response
   - BP10 Region received bot did not respond
   - BP11 & Response (REFile)
           AT REGIM

_____

- Copy OF Complete Administrative Remedy
# 1209177 ( FSA Eligibility date)
   - copout
   - BP8 & Response
   - BP9 & Response
   - BP10 Region received bot did not reply
   - BP11 & Response (REFile AT Region)

RCV'D USDC FLND PN
NOV 18 '24 AM11:42

ID 1205982

BP-11 ) Response

AO 236B
(Rev. 01/17)

# FACILITY ACCESS CARD (FAC) CARDHOLDER AGREEMENT
## Certificate of Acceptance and Acknowledgment of Responsibilities

**Purpose:**
Your organization has subscribed to certain FAC authentication, encryption and digital signature services. Accordingly, as an employee or contractor, you have been authorized to receive a FAC Card with digital certificates and corresponding public keys and private keys. The private keys will enable you to authenticate yourself to gain access to facilities or systems, digitally sign documents, and to decrypt data that has been encrypted for you. Other persons, organizations and/or applications will use the corresponding public keys to authenticate you for access control purposes, to verify your digital signature, or to encrypt data so only you can decrypt it.

**Credential Type:** *(Select one)*

☐ Initial Card Issuance  ☐ Certificate Recovery  ☐ Information Update

☐ Card Revocation  ☐ Card Renewal  ☐ Card Reissuance

**Certificate Accepted By (Cardholder):**

Cardholder's Name: _____

Unique Identification (Scanned in IDMS): _____

Organization (Unit): _____

Work Email Address: _____

Work Telephone Number: _____

**Your Obligations:**
As FAC Cardholder, you agree to the following:

1. You will comply with Your organization's security policies, rules and regulations regarding the use of the FAC which includes the protection and safeguarding of FAC and PIN code in a secure manner and in a manner including:
   - FACs will be protected when not in use (e.g., on your person, in a locked drawer, etc.),
   - Once activated (the PIN code has been entered), your FAC will not be left unattended until it is deactivated (e.g., removed from the reader),
   - PIN codes will not be shared or divulged to others
   - PIN codes shall be memorized and will not be recorded
   - FACs and/or PIN codes will not be lent, shared or provided to others
2. You will use the FAC provided to you by your organization only for business-related transactions;
3. You acknowledge that the use of a FAC private key will be deemed to be an acceptance of the related public key and associated certificate;
4. As soon as you become aware of, or suspect the compromise of your FAC or PIN code you will promptly report this to your organization.
5. You will make true representations at all times regarding the information in your FAC and the information provided to your employer. You will notify your employer if your personal information changes (name change, organization change, email address change, etc.) throughout the duration of your use so the FAC information is correctly updated; and

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 7, 2024

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : NOEL QUINTANA, 28864-510
      PENSACOLA FPC    UNT: 1 GP    QTR: B04-075L
      P.O. BOX 3933
      PENSACOLA,  FL 32516


FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 1205982-A2    CENTRAL OFFICE APPEAL
DATE RECEIVED  : SEPTEMBER 23, 2024
SUBJECT 1      : OTHER JAIL TIME CREDIT
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE
                 WRONG LEVEL.  YOU SHOULD HAVE FILED AT THE
                 INSTITUTION, REGIONAL OFFICE, OR CENTRAL
                 OFFICE LEVEL.

REJECT REASON 2: SEE REMARKS.

REMARKS        : NO EVIDENCE APPEAL WAS FILED AT THE REGION.  REFILE
                 YOUR APPEAL AT THE REGION.


RECEIVED

OCT 2 5 2024

Warden's Office

U.S. Department of Justice

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: QUINTANA NOEL   28864510   B   FPC PENSACOLA
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL**

I AM APPEALING THE DECISION OF THE BOP TO DENY MY REQUEST FOR CREDIT FOR 16 MONTHS THAT I SPENT IN OFFICIAL DETENTION IN MONTENEGRO WHILE WAITING FOR EXTRADITION TO THE U.S.A UNDER title 18 U.S.C 3585(b)

PLEASE NOTE Additional DETAILS And documents Attached. thank you.

9/13/24    Noel
DATE    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____    _____
DATE    GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE    CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    _____
DATE    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN    PRINTED ON RECYCLED PAPER    BP-231(13)
JUNE 2002

TRULINCS 28864510 - QUINTANA, NOEL - Unit: PEN-B-A

----------------------------------------------------------------------------------------------

FROM: 28864510
TO:
SUBJECT: ANNEX to BP11
DATE: 09/13/2024 08:19:27 AM

========= BP-11 CONTINUATION PAGE WITH DETAILS ========

NOTE: It was not possible to print the continuation page in just one sheet of paper because the printer at FPC Pensacola stopped printing 2 sides. sorry.

BOP Central Office                                September 13, 2024

I am appealing the decision of the BOP to deny my request for credit for 16 months (from 6/25/21 to 10/26/22) spent in Official Detention in Montenegro while waiting for extradition to the U.S.A under Title 18 U.S.C 3585(b) Credit for time spent in Official Detention based the following facts: (see *note about BP-10 under)

a) The answer from the DSCC provided by the Warden BP-9 and which is here attached marked (A1), says that, according to the OIA I was placed on home confinement on June 25, 2021 and a ban on leaving my apartment was imposed on the same day, therefore I did not qualify for the credit. However that is incorrect. The document from the Court in Montenegro, also here attached as (A2), shows that on June 25, 2021 the court imposed a prohibition to leave apartment enforced by local Budva police. There was police custody 24 hours. There is no mention to home confinement or release on any condition of bond or bail, which according to the definition of Official Detention are the conditions required to deny the credit.
Even if interpreted as a highly restrictive home confinement, there is a requirement in the official detention definition (A4), that the release must have been as a condition of bond, or release on own recognizance, which was not the case. Note the words highlighted in bold that says.."if such release was a condition of bond.."

b) The reply from the DCSS, misconstrued and thus applied the definition of Official Detention wrongly by using a section within the definition in the context of Koray and the old Pretrial Services Act 1982, stating that: .... a "release" condition that is highly restrictive, is not considered official detention; what the DSCC fails to assert is that I was not released on any condition of bond or bail, as stipulated on the Official Detention definition. I was detained in Montenegro from 6/24/21 to 10/26/22 under a Federal Arrest Warrant and Interpol Red Notice for my case 21-20245-CR-Ungaro/Reid. On June 25, 2021 the court in Montenegro ordered prohibition to leave apartment, enforced by the local police see attachment (A2) and that constitutes Official Detention.

c) Supreme court defined the meaning of release in the context of imprisonment as "to be free from restrain, confinement, to set loose". See Johnson 529 US at 57, as well as the extract here attached (A3) taken from 2015 U.S. Dist. Lexis 60914 United States v. Bunn 4th Circuit, footnote #9, 2nd paragraph. Therefore as per definition, I was not released.

d) BOP Program Statement 5880.28 definition of Official Detention (A4) on page 1-14G also provides in part that ..."includes time spent under a detention order when the court has recommended placement in a less secured environment or in a community based program as a condition of presentence detention" and also says..."In addition, on occasion it is necessary for the court to order placement in a less secured environment or in a community based program (including D.C. Department of Corrections' programs such as work release) because of overcrowding in the local place of detention.

e) Notably, a local lawyers strike, Covid-19 and overcrowding in the local detention center in Podgorica (where the court is located) were in place at the time that the court decided to detain me at the apartment. See extracts from the 2021 (the year in question) Montenegro Human Rights country report (A5) which corroborates the overcrowding, as well as (A6) for the lawyer strike. If there was overcrowding and I was placed in an apartment which is a less secure environment location, why the DSCC did not use this part of the Official Detention definition to grant the credit? Instead they used the context of the Bail Reform Act which do not apply to my case.

f) Reno v. Koray 515 US 50, 115 SCT 2021 (1995), which is the context that the DSCC used to deny me the credit, do not apply to my case. In Reno v. Koray a "release order" was entered by the court pursuant to 18 USCS 3142(c) ordering "release" on bail pending sentence. I did not have any release on bail order entered. Nor did I even had a bond hearing. I was detained in an apartment, which may have been what prompted the confusion for the DSCC, it was not as a condition of any release on bond or bail order. But, there is more, neither the Bail Reform Act, in which Reno v. Koray construed Title 3585(b), not the Federal Rules of Criminal Procedures, apply to International Extradition Proceedings. See attached extract of 2018 U.S. Dist. Lexis 174201::In re Headley::October 10, 2018, 11th Circuit. (A7)

TRULINCS 28864510 - QUINTANA, NOEL - Unit: PEN-B-A

--------------------------------------------------------------------------------------------------------------

g) The BOP definition of Official Detention (A4) and the the Supreme Court definition (A10) taken from Koray 515 US 50, exclude credit for time spent in a release order regardless of the severity or degree of the restrictions, but both definitions clearly specify "IF SUCH release order was a condition of bond or bail". Notably I was not released or bailed under any condition as the Court Document (A2) from Montenegro shows.

h) Montenegro Court document (A2) last paragraph on page 4 says ... "when passing the decision The Court took into account the principle of subsidiarity which implies that detention is imposed only if the same purposed may not be achieved by imposing a different measure, as well as the decisions of the European court of Human Rights which support this principle citing 3 cases where the defendants were held in detention.

i) Notably in Reno v Koray the Supreme Court explicitly rejected the notion that the determination of whether the person was in official detention or not depended on whether he or she was subject to "Jail-type confinement". Case law 2012 470 Fed. Appx. 855:: Hans v. Warden FCI Jesup, May 13, 2012. Court of Appeals 5 and 11th Circuit. (A8)

j) Analyzing the entire Official Detention Definition, not just one section, as it is contained in the BOP Program Statement 5880.28 pages 1-14G and 1-14H (A4), the location of the detention, the severity of the restrictions is not what actually really matters for the credit, instead, note highlighted in bold letters; what is relevant for the credit is the type of order entered by the court, detained (with credit) or released on conditions (with no credit). If I had no order of release on any conditions, why is my credit for official detention being denied?

k) If the OIA or the DSCC need further confirmation of my detention in Montenegro here is the contact number of 1st Rank Officer Danilo Kresnevic in charge of the police unit who enforced my detention. Tel: 382 67189570. Furthermore Mr. Nikola Boskovic Legal Firm Tel: 382 69470464 can assist navigating the court system in Montenegro if required. They both can confirm my detention.

l) I respectfully encourage the BOP Central Office to revise the decision of the DSCC applying the complete definition of Official Detention, the fact that I was never released on any bond or bail condition, as well as the fact that they are using an incorrect context case law (Reno v. Koray) and its interaction with the Bail Reform Act which do not apply to International Extradition process.

m) The court of Montenegro imposed a supervision measure which is not a release on bond or bail as stipulated in the Official Detention definition and by not following its own Program Statement and depriving me of my rights, the BOP is in contravention of 42 U.S.C 1983.

Noel Quintana Reg. 28864-510
FPC Pensacola

Attachments list:
- BP8 and BP9 Submitted and their respective replies. For BP-10 see note* under. - (A1) Reply from Warden. - (A2) Court Document from Montenegro. - (A3) Relevant extract of 2015 U.S. Dist. Lexis 60914 United States. Bunn, 4th Circuit, footnote #9, 2nd paragraph. - (A4) BOP Program Statement 5880.28 Official Detention definition. - (A5) & (A6) Relevant extracts of 2021 Montenegro Human Rights country report. - (A7) Extract of 2018 U.S. Lexis 174201:: In re Hedley:: October 10, 2018::11th Circuit. - (A8) Relevant extract of 2012 470 Fed. Appx. 855::Hans v. Warden FCI Jesup, May 13, 2012. Court of Appeals 5th and 11th Circuit. - (A9) Title 3585(b). - (A10) Official Detention definition Supreme Court Reno v. Koray 515 US 50.

*Note: BP-10 form was submitted (see BP10 attached), it was received by the Regional Office 7/29/24, see tracking # also included with the set, but no reply was received. Therefore since this is a time sensitive process and as per BOP 542.18 [no response means denial and continue to the next Level].

FEDERAL PRISON CAMP  FPC , PENSACOLA
PART B - RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY
1205982-F1

This is in response to your Request for Administrative Remedy
received July 17, 2024; wherein you requested the application of
Foreign Jail Time Credits from June 24, 2021, to October 26,
2022.

The following response was issued by the Designation and
Sentence Computation Center on July 3, 2024.

Based on documents contained in the official records, inmate
Quintanta is not authorized credit under 18 U.S.C. 3585(b), for
time spent in Montenegro. Office of International Affairs
confirmed you were placed on home confinement on June 25th, 2021,
and a ban on leaving your apartment was imposed on the same day
which lasted through October 26, 2022. The Bureau of Prisons
uses Title 18, USC 3585(b) to determine prior credit on a
federal sentence. Title 18, USC 3585(b) states in part…"A
release condition that is "highly restrictive," and that
includes "house arrest," "electronic monitoring" or "home
confinement"; or such requiring the defendant to report daily to
the U.S. Marshal, U.S. Probation Service, or other person; is
not considered as time in official detention." As such, this
time is not creditable as qualified presentence time credit.

Based on the memorandum, your request for Administrative Remedy
is denied.

If you are not satisfied with this response, you may appeal to
the Regional Director, Southeast Regional Office, 3800 Camp
Creek Parkway, S.W., Building 2000, Atlanta, Georgia 30331-6226.
Your appeal must be received in that office within 20 days from
the date of this response.


_____          _____
S. Saulsberry, Warden                     Date

A1



*Certified Translation from Montenegrin into English_____

/Coat of Arms of Montenegro/
HIGH COURT IN PODGORICA
Pom. No.: 75/21
Date: 25 June 2021



HIGH COURT IN PODGORICA, investigating judge Vladimir Novovic, with the participation of the stenographer Hida Rasic, in the case against:

a) the citizen of the United States of America, Canada and the Republic of Cuba, Noel Quintana, alias Tomas Noel Quintana Valdespino, on the grounds of the international arrest warrant of NCB Interpol Washington, USA, No.: 2021/35397 as of 02 June 2021, issued on the base of the arrest warrant of the United States District Court for the Southern District of Florida No. 21-20245-CR-UNGARO/REID as of 22 April 2021, with the purpose of extradition in order to conduct the criminal proceeding for the probable cause of having committed criminal offences *conspiracy aimed at smuggling goods into the USA* and *selling or offering plants which have been transported or sold contrary to the USA law*, in violation of Title 18 of the United States Code, Section 371, *failure to declare* in violation of Title 16 of the United States Code, Sections 3372 (f) (1) and 3373 (d) (3) (A) (i), *smuggling goods into the United States*, in violation of Title 18 of the United States Code, Sections 545 and 2, and *conspiracy to commit money laundering*, in violation of Title 18 of the United States Code, Section 1956 (h); and

b) the citizen of the United States of America and the Republic of Cuba, alias Kelsy Hernandez Diaz, on the grounds of the international arrest warrant of NCB Interpol Washington, USA, No.: 2021/35395 as of 03 June 2021, issued on the base of the arrest warrant of the United States District Court for the Southern District of Florida No. 21-20245-CR-UNGARO/REID as of 22 April 2021, with the purpose of extradition in order to conduct the criminal proceeding for the probable cause of having committed criminal offences *conspiracy aimed at smuggling goods into the USA and selling or offering plants which have been transported or sold contrary to the USA law*, in violation of Title 18 of the United States Code, Section 371, *failure to declare* in violation of Title 16 of the United States Code, Sections 3372 (f) (1) and 3373 (d) (3) (A) (i), *smuggling goods into the United States*, in violation of Title 18 of the United States Code, Sections 545 and 2, and *conspiracy to commit money laundering*, in violation of Title 18 of the United States Code, Section 1956 (h);

pursuant to Article 17 of the Law on International Legal Help in Criminal Matters, the United Nations Convention Against Transnational Organized Crime, the Convention on Extradition between the Kingdom of Serbia and the United States of America, and Article 166 par. 1 and par. 2 items 1 and 6, Article 167 par. 1 and 6, Article 168 par. 1 and 2 of the Criminal Code, on 25 June 2021 at 11.35 a.m. passed the following

### DECISION

The defendants with the following personal data:

1. Noel Quintana, alias Tomas Noel Quintana Valdespino, Passport No. 549900265 issued by the USA, HB632633 issued by Canada, K549223 issued by the Republic of Cuba, and the Temporary Stay Permit No. 106395877 issued by the Ministry of Internal Affairs of Montenegro, Office in Budva, father's name: Luis Quintana, mother's name: Mercedes Valdespino, born on 29 December 1959 in Havana, the Republic of Cuba, the citizen of the United States of America, Canada and the Republic of Cuba, having

1

residence in Budva, Rozino, street 16, retired, married, father of three children, literate, average financial standing, Unique Personal No.: 2912959234031 as in the Temporary Stay Permit No. 106395877 issued by the Ministry of Internal Affairs of Montenegro, Office in Budva;

2. Kelsy Quintana, alias Kelsy Hernandes Diaz, Passport No. 545532432 issued by the USA and K839097 issued by the Republic of Cuba, and the Temporary Stay Permit No. 618298845 issued by the Ministry of Internal Affairs of Montenegro, Office in Budva, father's name: Jose Hernandez, mother's name: Ana Teresa Diaz, born on 02 May 1966 in Havana, the Republic of Cuba, having residence in Budva, Rozino, street 16, the citizen of the United States of America and the Republic of Cuba, by occupation an accountant, literate, married, mother of two children, average financial standing, Unique Personal No.: 0205966239035 as in the Temporary Stay Permit No. 618298845 issued by the Ministry of Internal Affairs of Montenegro, Office in Budva;

ARE HEREBY IMPOSED SUPERVISION MEASURES

- With regard to the defendant Noel Quintana, alias Tomas Noel Quintana Valdespino, on the grounds of international arrest warrant of NCB Interpol Washington, USA, No.: 2021/35397 as of 02 June 2021, issued on the base of the arrest warrant of the United States District Court for the Southern District of Florida No. 21-20245-CR-UNGARO/REID as of 22 April 2021, with the purpose of extradition in order to conduct the criminal proceeding for the probable cause of having committed criminal offences *conspiracy aimed at smuggling goods into the USA and selling or offering plants which have been transported or sold contrary to the USA law,* in violation of Title 18 of the United States Code, Section 371, *failure to declare* in violation of Title 16 of the United States Code, Sections 3372 (f) (1) and 3373 (d) (3) (A) (i), *smuggling goods into the United States,* in violation of Title 18 of the United States Code, Sections 545 and 2, and *conspiracy to commit money laundering,* in violation of Title 18 of the United States Code, Section 1956 (h); and

- With regard to the defendant Kelsy Quintana, alias Kelsy Hernandez Diaz, on the grounds of international arrest warrant of NCB Interpol Washington, USA, No.: 2021/35395 as of 03 June 2021, issued on the base of the arrest warrant of the United States District Court for the Southern District of Florida No. 21-20245-CR-UNGARO/REID as of 22 April 2021, with the purpose of extradition in order to conduct the criminal proceeding for the probable cause of having committed criminal offences *conspiracy aimed at smuggling goods into the USA and selling or offering plants which have been transported or sold contrary to the USA law,* in violation of Title 18 of the United States Code, Section 371, *failure to declare* in violation of Title 16 of the United States Code, Sections 3372 (f) (1) and 3373 (d) (3) (A) (i), *smuggling goods into the United States,* in violation of Title 18 of the United States Code, Sections 545 and 2, and *conspiracy to commit money laundering,* in violation of Title 18 of the United States Code, Section 1956 (h);

as follows:

— prohibition to leave the apartment located in Budva at the address: street 16, Rozino, in the way that the defendants herein are not allowed to leave the apartment located at the above address and the rooms that are functionally connected to the apartment, which measure shall be enforced by the Budva Police Department. Exceptionally, by means of a special decision it can be decided that the defendants may leave the apartment for a certain time period if necessary for medical treatment or due to special circumstances which may result in serious consequences for life, health and property;

— temporary seizure of travel documents of the defendant Noel Quintana, alias Tomas Noel Quintana Valdespino: USA passport no. 54990?? Canadian passport no.: HB632633, the



2

Republic of Cuba passport no.: K549223, and the Temporary Stay Permit No. 106395877 issued by the Ministry of Internal Affairs of Montenegro, Office in Budva, and temporary seizure of travel documents of the defendant Kelsy Quintana, alias Kelsy Hernandes Diaz, USA passport no. 545532432 and the Republic of Cuba passport no.: K839097, and the Temporary Stay Permit No. 618298845 issued by the Ministry of Internal Affairs of Montenegro, Office in Budva, which passports and temporary stay permits shall be kept in the court case files.

The defendants are hereby warned that violation of the above imposed measures may result in imposing the detention against them, whereas the said measures may last as long as the need may be, the longest until extradition.

The USA shall be notified through diplomatic channels about the supervision measures imposed herein and shall be required to request the extradition of the defendants herein.

An appeal against this Decision may be filed to the criminal panel of judges of this court in line with Article 24 par. 7 of the Criminal Procedure Law no later than 3 days following the receipt of this Decision.

The appeal shall not stay the execution of the Decision.

### Statement of Grounds



The officers of the Police Department in Podgorica brought before the above named investigating judge the following persons: Noel Quintana, alias Tomas Noel Quintana Valdespino, with the documents showing that the said person is the citizen of the United States of America, Canada and the Republic of Cuba, and that he is wanted by the USA based on the international arrest warrant of NCB Interpol Washington, USA, No.: 2021/35397 as of 02 June 2021, issued on the base of the arrest warrant of the United States District Court for the Southern District of Florida No. 21-20245-CR-UNGARO/REID as of 22 April 2021, with the purpose of extradition in order to conduct the criminal proceeding for the probable cause of having committed criminal offences *conspiracy aimed at smuggling goods into the USA* and *selling or offering plants which have been transported or sold contrary to the USA law*, in violation of Title 18 of the United States Code, Section 371, *failure to declare* in violation of Title 16 of the United States Code, Sections 3372 (f) (1) and 3373 (d) (3) (A) (i), *smuggling goods into the United States*, in violation of Title 18 of the United States Code, Sections 545 and 2, and *conspiracy to commit money laundering*, in violation of Title 18 of the United States Code, Section 1956 (h); and Kelsy Quintana, alias Kelsy Hernandez Diaz, with the documentation showing that the said person is the citizen of the United States of America and the Republic of Cuba, and that she is wanted by the USA based on international arrest warrant issued by NCB Interpol Washington, USA, No.: 2021/35395 as of 03 June 2021, issued on the base of the arrest warrant of the United States District Court for the Southern District of Florida No. 21-20245-CR-UNGARO/REID as of 22 April 2021, with the purpose of extradition in order to conduct the criminal proceeding for the probable cause of having committed criminal offences *conspiracy aimed at smuggling goods into the USA and selling or offering plants which have been transported or sold contrary to the USA law*, in violation of Title 18 of the United States Code, Section 371, *failure to declare* in violation of Title 16 of the United States Code, Sections 3372 (f) (1) and 3373 (d) (3) (A) (i), *smuggling goods into the United States*, in violation of Title 18 of the United States Code, Sections 545 and 2, and *conspiracy to commit money laundering*, in violation of Title 18 of the United States Code, Section 1956 (h).

Investigating judge has interviewed the persons named above who have confirmed their personal data stated in the Interpol arrest warrant, and who have decided to defend themselves by remaining silent. The documentation delivered along with the defendants herein contains the data about the wanted

3

persons from which it can be concluded that one defendant is the citizen of the United States of America, Canada and the Republic of Cuba, while the second defendant is the citizen of the United States of America and the Republic of Cuba, meaning that the defendants herein are not the citizens of Montenegro. This court, as the court having jurisdiction to act in the cases of international legal help and extradition of defendants, received the request form the United States of America for temporary detention of the persons named in the enacting clause herein, whereas from the Interpol arrest warrant and the said request for temporary detention it is clear that the USA has an intention to request the extradition of said persons.

The defendants herein are foreign citizens who are subject of international arrest warrant, and therefore there is a risk of them fleeing the country. However, the defendants have temporary stay in Montenegro, and the risk of fleeing may be prevented by imposing supervision measures such as prohibition to leave the apartment and temporary seizure of travel documents, the measures imposed by the court with the aim to ensure the presence of the defendants for unobstructed conduct of the criminal proceeding.

When passing this Decision, the court took into account the principle of subsidiarity which implies that detention is imposed only if the same purpose may not be achieved by imposing a different measure, as well as the decisions of the European Court for Human Rights which support this principle, Letellier against France 12369/86 as of 26 June 1991, Mamedova against Russian 7064/05 as of 01 June 2006, and Mangouras against Spain 12050/04 as of 08 January 2009.

Based on the above said, it has been decided as in the enacting clause herein.

Stenographer,                                      Investigating judge,
Hida Rasic                                          Vladimir Novovic

The accuracy of the engrossment
verified by
/signature/

/Round stamp reading:
High Court, Podgorica, Montenegro/

**The end of translation**_____

I, Ana Rasovic, certified interpreter for the English language, appointed by the Decision of the Minister of Justice No. 03-745-1388/17-1, hereby certify that this translation is identical to its original made in Montenegrin language.

In Podgorica, 25 June 2021

/signature and round stamp reading: TUMAC/ENGLESKI JEZIK/INTERPRETER/TRANSLATOR/HIGH LANGUAGE/Ana Rasovic/PONGORICA/

4

There can be little question about the meaning of the word "**release**" in the context of imprisonment. It means "[t]o loosen or destroy the force of; to remove the obligation or effect of; hence to alleviate or remove; . . . [**t]o let loose again; to set free** from restraint, confinement, or servitude; to set at liberty; to let go." Webster's New International Dictionary 2103 (2d ed.1949). As these definitions illustrate, the ordinary, commonsense meaning of **release** is to be freed from confinement. To say respondent was released while still imprisoned diminishes the concept the word intends to convey. *Johnson*, 529 U.S. at 57. The Court further noted that while the term of imprisonment and the term of **release** are "related, for the latter cannot begin until the former expires," they "are not interchangeable." *Id.* at 58-59.



A3

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A4

**Official detention.**    "Official detention" is defined,
for purposes of this policy, as time spent under a federal
detention order.    This also includes time spent under a
<u>detention</u> order when the court has <u>recommended</u> placement in a
less secure environment or in a community based program as a
condition of

*presentence detention.    In addition, on occasion it is
necessary for the court to <u>order</u> placement in a less secure
environment or in a community based program (including D.C.
Department of Corrections' programs such as work release) because
of overcrowding in the local place of detention.    A person under
these circumstances remains in "official detention", subject to
the discretion of the Attorney General and the U.S. Marshals'    *
Service with respect to the place of detention.    Those
defendants placed in a program and/or residence as a condition of
detention are subject to removal and return to a more secure
environment at the discretion of the Attorney General and the
U.S. Marshals' Service, and further, remain subject to
prosecution for escape from detention for any unauthorized
absence from the

*   program/residence.    (If there is any question as to whether
such a defendant was in fact under the jurisdiction of the U.S.
Marshals' Service, i.e., in the custody of the Attorney General,
staff shall contact the appropriate U.S. Marshal for
verification.)    Such a defendant is not eligible for any credits
while <u>released</u> from detention.

Page 1 - 14G

In <u>Reno v. Koray,</u> 115 S.Ct 2021 (1995), the U.S.
Supreme Court held that time spent under restrictive conditions
of release (including time spent in a community treatment center
(CCC) or similar facility) was not official detention entitling
an inmate to prior custody time credit under

18 U.S.C. § 3585(b).    The court found that the interaction of
the Bail Reform Act and 18 U.S.C. § 3585(b) supported the Bureau
of Prisons' interpretation that a defendant is **either released**
(<u>with</u>

<u>no credit for time under conditions of release)</u> **or detained** (<u>with</u>
<u>credit for time in official detention)</u>.

progstat                                      1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions
and terms and conditions of the Matthew Bender Master Agreement.

28864510

<u>Koray</u> has also overruled <u>Brown v. Rison,</u> 895 F.2d
895 (9th Cir. 1990).   As a result, the awarding of presentence
time credit under 18 U.S.C. § 3568 for time spent under
restrictive conditions shall also be discontinued.   <u>Brown</u> is the
Ninth Circuit case that required the Bureau of Prisons to give
time credit to a sentence for time spent in a CCC or similar
facility.

The <u>Koray</u> decision means, therefore, that time
spent in residence in a CCC or similar facility as a result of
the <u>Pretrial Services Act of 1982</u> (18 U.S.C. § 3152-3154), or as
a result of a condition of bond or release on own recognizance
(18 U.S.C. § 3141-3143, former 3146), or as a condition of

parole, probation or supervised release, is not creditable to the
service of a subsequent sentence.   In addition, a release
condition that is "highly restrictive," and that includes "house
arrest", "electronic monitoring" or "home confinement"; or such

as requiring the defendant to report daily to the U.S. Marshal,

Page 1 - 14H

U.S. Probation Service, or other person; is not considered as
time in official detention.   **In short, under <u>Koray,</u> a defendant
is not entitled to any time credit off the subsequent sentence,**

**regardless of the severity or degree of restrictions, <u>if such</u>
<u>release was a condition</u> of bond or release on own recognizance,
or as a condition of parole, probation or supervised release.**

progstat                                    2

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

***Prison and Detention Center Conditions***

There were some reports regarding prison and detention center conditions that raised **human rights concerns**.

**Physical Conditions:** There were some poor conditions in prisons and pretrial detention facilities due to overcrowding and access to medical care. In the report issued following its 2017 visit to Montenegro, the CPT noted **problematic levels of prison overcrowding**, i.e., less than 32.3 square feet of space per inmate in multiple-occupancy cells in certain sections and remand prisoners confined to their cells for 23 hours a day without being offered activities for months or years. The CPT noted that material conditions in police stations it visited were not suitable for detaining persons for up to 72 hours due to structural deficiencies, such as poor access to natural light, inadequate ventilation, poor conditions of hygiene, and irregular provision of food. NGOs reported that detainees who were addicted to drugs, had mental disabilities, or had other disabilities continued to face difficulties in obtaining adequate treatment while detained.

The CPT also noted the level of serious interprisoner violence was a long-standing and persistent problem at the remand prison and the Institute for Sentenced Prisoners. During the year there were reports of cases of violence in the country's primary prison attributed to the long-standing "war" between the country's two main organized criminal groups, which prison authorities managed by taking preventive measures, such as providing separate accommodations and preventing contact between persons who are members of opposing criminal groups as well as other operational and tactical measures and actions, such as providing close personal supervision of individuals and conducting random periodic searches of their persons and accommodations. There were widespread reports that prison employees cooperated with members of organized criminal groups, including one in prison. Some such employees were prosecuted by authorities.

In 2020 the Council for Civilian Control of Police Operations noted poor conditions in the pretrial detention rooms in the security center in Niksic. In addition to lacking water and being equipped with damaged and dirty mattresses, overcrowding was a problem because there were only seven beds for the nine detainees. In other inspections of the security centers in **Podgorica** and Niksic, the council noted similar problems with overcrowding and a lack of capacity to provide basic services to detainees.

Country Reports                                    1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

From May 24 through the end of July, the country's **Bar Association went on strike** in protest of proposed changes to the Law on Fiscalization, resulting in the suspension of court operations and the postponement of trials. The law regulates issuing of bills for products and services in real time through the internet and a fiscal service. Attorneys opposed the changes, claiming that they would violate client confidentiality, since bills submitted by attorneys would have to list the specific reason for the service. The changes would also create the possibility that fiscal inspectors could access protected client files during audits. Several NGOs involved in judicial matters, including the Association of Lawyers of Montenegro, European Association for Law and Finance, Human Rights Action, Women's Rights Center, Center for Civic Education, Association of Youth with Disabilities of Montenegro, Committee of Young Lawyers of Montenegro, Prima, Association of Parents, ADAMAS, and Alliance of Youth Workers released a statement noting the deleterious impact of the strike on the quick resolution of trial proceedings.



Country Reports                                        **1**

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

28864510

## IV. **ANALYSIS OF APPLICABLE EXTRADITION LAW**

A foreign or **international extradition proceeding is not a criminal case**. *Martin v. Warden, Atlanta, Pen.*, 993 F.2d 824, 829 (11th Cir.1993); *Kamrin v. United States*, 725 F.2d 1225, 1227-28 (9th Cir.1984). "Foreign extraditions are *sui generis* in nature, neither civil nor criminal in nature and set forth their own law." *In re Extradition of Mohammad Safdar Gohir*, 2014 U.S. Dist. LEXIS 69769, 2014 WL 2123402, at *6 (D.Nev.2014); *In re Extradition of Vargas*, 978 F.Supp.2d 734, 744 (S.D. Texas 2013). The process of formal extradition is a diplomatic process, governed generally by the applicable extradition treaty and the federal extradition statute, 18 U.S.C. §§ 3181-3196. *In re Extradition of Mohammad Sadfar Gohir, supra*, 2014 U.S. Dist. LEXIS 69769, [WL] at *6.

Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to international extradition proceedings. Fed. R. Crim. P. 1(a)(5)(A); Fed. R. Evid. 1101(d)(3); *Afanasjev v. Hurlburt*, 418 F.3d 1159, 1164-65 (11th Cir.2005); *Melia v. United States*, 667 F.2d 300, 302 (2d Cir.1981); *Bovio v. United States*, 989 F.2d 255, 259 n. 3 (7th Cir.1993).

There is little statutory guidance on the issue of bond or release pending future proceedings{2018 U.S. Dist. LEXIS 19} in extradition matters. **The Bail Reform Act does not apply to extradition proceedings**. *See* 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2); *In re Extradition of Shaw*, No. 14-MC-81475-WM, 2015 U.S. Dist. LEXIS 18376, 2015 WL 521183, at *5 (S.D. Fla. Feb. 6, 2015); *In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1213 (D.Nev.1993); *In re Extradition of Mohammad Sadfar Gohir, supra*, 2014 U.S. Dist. LEXIS 69769, 2014 WL 2123402, at *11. As such, "[f]ederal district courts have almost exclusively, and by necessity, developed a federal common law to fill in the gaps left by current legislation for bail determinations in foreign extradition cases." *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 470 (S.D. Tex. 2010). "This lack of guidance has created contradictory, and often irreconcilable, lower court opinions on the subject of bail availability for defendants facing international extradition." *Id.*



1ykcases                                   1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

28864510

In <u>Reno v. Koray</u>, the Supreme Court considered the meaning of "official detention" in 18 U.S.C. § 3585(b). 515 U.S. 50, 52, 55-56, 115 S. Ct. 2021, 132 L. Ed. 2d 46 (1995). The Court considered whether a defendant who was released to a Volunteers of America ("VOA") community treatment center pending sentencing, but whose "release order" required that he be "confined to [the] premises" and was without "authoriz[ation] to leave for any reason" unless accompanied by a government agent was in "official detention." <u>Id</u>. at 52-53. The Court held that a defendant suffers "detention" only when committed to the custody of the Attorney General; a defendant who is admitted to bail on restrictive conditions is "released." <u>Id</u>. at 57. The Court acknowledged that under this definition a defendant could be "released" even though he or she was subject to restraints that did not materially differ from those imposed on "detained" defendants. <u>Id</u>. at 62-63. The Court **explicitly rejected** the notion that the determination of whether or not a person was in "official detention" depended on whether he or she was subjected to "**jail-type** confinement." <u>Id</u>. at 64. {2012 U.S. App. LEXIS 3}The Court concluded that the time the defendant spent at the VOA community treatment center while "released" on bail was not "official detention," and thus, the defendant was not entitled to credit against his sentence of imprisonment. <u>Id</u>. at 65.



A05_11CS                                              1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

28864510

## § 3585.  Calculation of a term of imprisonment

**(a) Commencement of sentence.**   A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

**(b) Credit for prior custody.**   A defendant shall be given credit toward the service of a term of imprisonment for any time he has **spent in official detention** prior to the date the sentence commences—

**(1)** as a result of the offense for which the sentence was imposed; or

**(2)** as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.



USCS                                      1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

"Definitions:

. . . . .

"Official detention.  'Official detention' is defined, for purposes of this policy, as time spent under a federal detention order.  This also includes time spent under a detention order when the court has recommended placement in a less secure environment or in a community based program as a condition of presentence detention.  A person under these circumstances remains in 'official detention,' subject to the discretion of the Attorney General and the U.S. Marshals Service with respect to the place of detention.  Those defendants placed in a program and/or residence as a condition of detention are subject to removal and return to a more secure environment at the discretion of the Attorney General and the U.S. Marshals Service, and further, remain subject to prosecution for escape from detention for any unauthorized absence from the program/residence.  Such a person is not similarly situated with persons conditionally released from detention with a requirement of program participation and/or residence.

"A defendant is not eligible for any credits while released from detention.  Time spent in residence in a community corrections center as a result of the Pretrial Services Act of 1982 (18 USC § 3152-3154 [18 USCS §§ 3152-3154]), or as a result of **a condition of bail or bond** (18 USC § 3141-3143 [18 USCS §§ 3141-3143]), is not creditable as presentence time.  **A condition of bail or bond** which is 'highly restrictive,' and that includes 'house arrest', 'electronic monitoring' or 'home confinement'; or such as requiring the defendant to report daily to the U.S. Marshal, U.S. Probation Service, or other person; is not considered as time in official detention.  Such a defendant is not subject to the discretion of the U.S. Attorney General, the Bureau of Prisons, or the U.S. Marshals Service, regarding participation, placement, or subsequent return to a more secure environment, and therefore is not in a status which would indicate an award of credit is appropriate (see Randall v Whelan, 938 F.2d 522 (4th Cir. 1991) and U.S. v Insley, 927 F.2d 185 (4th Cir. 1991).  Further, the government may not prosecute for escape in the case of an unauthorized absence in such cases, as the person has been lawfully released from 'official detention.' "  (Emphasis in original.)



LED2                                                1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

OFFICIAL USE

Certified Mail Fee

$ ⟺ 28864-510 ⟺
EX          Noel Quintana Sr.
            Federal Prison Camp Pensacola
            P O Box 3949
Po          Pensacola, FL 32516
            United States

$
Tot

$
Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

PS Form 3800, January 2023 PSN 7530-02-000-9047     See Reverse for Instructions

9589 0710 5270 1397 2457 67

TRULINCS  28864510 - QUINTANA, NOEL - Unit: PEN-B-A

---------------------------------------------------------------------------------------------------

FROM: Abackp, Abel
TO: 28864510
SUBJECT: [george]
DATE: 09/07/2024 07:21:08 PM

USPS 9589071052701397245767 Delivered, Left with Individual 07/29/2024  1:49pm ATLANTA GA 30331 Reply STOP to cancel

TRULINCS  28864510 - QUINTANA, NOEL - Unit: PEN-B-A

----------------------------------------------------------------------------------------------------

FROM: Aaaa, Aaaa
TO: 28864510
SUBJECT: [george]
DATE: 09/23/2024 09:06:08 AM

USPS 9589071052701397246092, Delivered, Front Desk/Reception/Mail Room 09/23/2024 7:09am WASHINGTON DC 20534
Reply STOP to cancel



Camp Pensacola
FL 32516



9589 0710 5270 1397 2460 92

9589 0710 5270 1397 2460 92

U.S. Postal Service
CERTIFIED MAIL RECEIPT
Domestic Mail Only

OFFIC

Certified Mail Fee

Extra Services & Fees (check box)
☐ Return Receipt (hardcopy)
☐ Return Receipt (electronic)
☐ Certified Mail Restricted
☐ Adult Signature Required
☐ Adult Signature Restricted

Postage

Total

Sent To

Street and Apt.

City, State, ZIP+4

28864-510 ⇦
Noel Quintana Sr.
Federal Prison Camp Pensacola
P O Box 3949
Pensacola , FL 32516
United States



⇔28864-510⇔
B O P Central Office
Bp-11
320 1ST ST NW
Administrative Remedies
Washington, DC 20534
United States

SEP 16 2024

ID 1205982
COPOOT +
BP-10
(Contains BP-8 And BP9)

THERE WAS No
Response FROM
Central Region
SEE CERTIFIED MAIL
ConFiRMATion enclosed

AO 236B
(Rev. 01/17)

# FACILITY ACCESS CARD (FAC) CARDHOLDER AGREEMENT
## Certificate of Acceptance and Acknowledgment of Responsibilities

6. You agree to use the FAC card in accordance with Federal law and the Federal Bridge certification Authority (FBCA) certificate Policy. You consent to the retention and use of all personal information that you submit to permit the CA and your employer to comply with any obligations arising under the FBCA Certificate Policy.

**Revocation of FAC or Digital Certificates on the Card**

Your FAC or any of its certificates may be revoked at any time and without notice. The reasons for such revocation include, but are not limited to, the following:

- Your FAC is lost, stolen, or suspected of having been compromised
- Your FAC private keys or certificates become unavailable and no recovery is possible
- Your identifying information contained in the FAC digital certificates is no longer valid
- You are suspected of fraud or other adverse behavior
- You violate this FAC Cardholder Agreement

**Cardholder:**

I have read and understand this PIV-I Cardholder Agreement. I agree that I will abide by the terms and conditions of this PIV-I Cardholder Agreement and will meet my obligations as set forth therein. I acknowledge receipt of the PIV-I Card and I affirm that the foregoing is true and correct.

Cardholder's Employer: ___Federal Judiciary_____

Printed Name: _____

Signature: _____  Date: _____

**Issuing Officer:**

By signing below, the undersigned Issuing Officer certifies under penalty of perjury as set forth in 28 U.S.C. 1746 of the U.S. Code that he or she has personally: (1) verified the eligibility of the Applicant to receive a PIV-I Card and certificates; (2) verified the identity of the Applicant in accordance with procedures in the Guide to Trusted Roles for the PIV-I Managed Service, (3) witnessed the Applicant sign this form. I affirm that the foregoing is true and correct.

Issuing Officer's Title: _____

Printed Name: _____

Signature: _____

Date: _____  Time: _____

Page 2 of 2

U.S. Department of Justice

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

| From: | Noel Quintana | 28964-510 | B | FPC Pensacola |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**

I am appealing the reply provided to me on my BP 9 requesting credit for 16 months spent in official detention in Montenegro while waiting for extradition to the U.S.A. under Title 18 U.S.C. 3585 (b).

Please see additinal details and documents attached.

| 7/26/24 | Noel |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B - RESPONSE**

FILED USDC FLND PN
NOV 18 '24 AM 11:42

| | |
|---|---|
| DATE | REGIONAL DIRECTOR |

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _   CASE NUMBER: _ _ _ _ _ _ _ _ _ _

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|---|

SUBJECT: _____

| | |
|---|---|
| DATE | SIGNATURE, RECIPIENT OF REGIONAL APPEAL |

FPI-PEPR          ✪ PRINTED ON RECYCLED PAPER          BP-230(13)
JUNE 2002

TRULINCS 28864510 - QUINTANA, NOEL - Unit: PEN-B-A

---------------------------------------------------------------------------------------------------

FROM: 28864510
TO:
SUBJECT: ANNEX Regional Director
DATE: 07/25/2024 11:35:21 AM

========= ANNEX WITH DETAILS ========

I am appealing the reply provided to me on my BP9 requesting credit for 16 months (from 6/25/21 to 10/26/22) spent in Official Detention in Montenegro while waiting for extradition to the U.S.A under Title 18 U.S.C 3585(b). Please see reply of the BP-9 attached.
I base my appeal on the following facts:

a) The answer from the DSCC provided by the Warden and which is here attached, says that I was placed on home confinement on June 25, 2021 and a ban on leaving my apartment was imposed on the same day, therefore I did not qualified for the credit. However that is incorrect. Court document from Montenegro, here attached, never mentions home confinement. It just says "prohibition to leave apartment enforced by Budva police". There was police custody 24 hours.

b) The reply from the DCSS also stated that a "release" condition that is highly restrictive in the context of the Koray decision and the Pretrial Services Act 1982 (18 U.S.C. 3152-3154) is not considered official detention; while the DSCC fails to assert is that I was not released on any condition of bond or bail. I was detained in Montenegro from 6/24/21 to 10/26/22 following a Federal Arrest Warrant and Interpol Red Notice for my case 21-20245-CR-Ungaro/Reid. On June 25, 2021 the court in Montenegro ordered prohibition to leave apartment, enforced by the local police (document attached). Which is Official Detention.

c) The BOP Program Statement 5880.28 definition of Official Detention on page 1-14G also provides in part that ..."includes time spent under a detention order when the court has recommended placement in a less secured environment or in a community based program as a condition of presentence detention" and also says..."In addition, on occasion it is necessary for the court to order placement in a less secured environment or in a community based program (including D.C. Department of Corrections' programs such as work release) because of overcrowding in the local place of detention. A local lawyers strike and Covid-19 were among the issues that prompted my detention at the apartment.

d) Title 18 U.S.C 3585(b). Credit for Prior Custody spent in Official Detention. The BOP definition of Official Detention as well as the statutory definition, (both attached), exclude credit for time spent in a "release" order regardless of the severity or degree of the restrictions "If such release order was a condition of bond or bail". Notably I was not released or bailed at all.

e) The Office of International Affairs or the concern department of the BOP, can investigate if the decision from the court in Montenegro to order my detention, following the federal arrest warrant, and deciding prohibition to leave apartment enforced by the local police was a condition of release on bond or bail. The document shows that the decision of the court included absolutely no order of "release" on bond or bail of any kind.

f) Reno v. Koray 515 US 50, 115 SCT 2021 (1995), do not apply to my case. In Reno v. Koray a "release order" was entered by the court pursuant to 18 USCS 3142(c) ordering "release" on bail pending sentence. I did not have any release order entered.

g) Notably in Reno v Koray the supreme court (certiorari #8) explicitly rejected the notion the determination of whether the person was in official detention or not depending on whether he or she was subject to "Jail-type confinement". Case law 012 470 Fed. Appx. 855:: Hans v. Warden FCI Jesup, May 13, 2012. Court of Appeals 5 and 11th Circuit.

h) Lastly, as it is stated on the BOP Program Program statement page 1-14H. "Title 18 U.S.C 3585(b). The court supported BOP interpretation that a defendant is "either released (with no credit) or detained (with credit for time in official detention)" The relevant fact is that I was detained and not released. The location where the court ordered the Official Detention is irrelevant. Therefore as per 18 USC 3585(b) Official Detention, I should receive the time credit.

I respectfully request the Regional Office to review my case and decide on the aforementioned facts.

Noel Quintana Reg. 28864-510

Attached: BP8 & BP9 with Reply / Montenegro Document / Statutory Official Detention / BOP Official Detention.

FEDERAL PRISON CAMP (FPC), PENSACOLA
PART B - RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY
1205982-F1

This is in response to your Request for Administrative Remedy
received July 17, 2024; wherein you requested the application of
Foreign Jail Time Credits from June 24, 2021, to October 26,
2022.

The following response was issued by the Designation and
Sentence Computation Center on July 3, 2024.

Based on documents contained in the official records, inmate
Quintanta is not authorized credit under 18 U.S.C. 3585(b), for
time spent in Montenegro. Office of International Affairs
confirmed you were placed on home confinement on June 25th, 2021,
and a ban on leaving your apartment was imposed on the same day
which lasted through October 26, 2022. The Bureau of Prisons
uses Title 18, USC 3585(b) to determine prior credit on a
federal sentence. Title 18, USC 3585(b) states in part…"A
release condition that is "highly restrictive," and that
includes "house arrest," "electronic monitoring" or "home
confinement"; or such requiring the defendant to report daily to
the U.S. Marshal, U.S. Probation Service, or other person; is
not considered as time in official detention." As such, this
time is not creditable as qualified presentence time credit.

Based on the memorandum, your request for Administrative Remedy
is denied.

If you are not satisfied with this response, you may appeal to
the Regional Director, Southeast Regional Office, 3800 Camp
Creek Parkway, S.W., Building 2000, Atlanta, Georgia 30331-6226.
Your appeal must be received in that office within 20 days from
the date of this response.

_____           _____
S. Saulsberry, Warden                Date

**Official detention.**     **"Official detention" is defined,**

for purposes of this policy, as time spent under a federal
detention order.     This also includes time spent under a
<u>detention</u> order when the court has <u>recommended</u> placement in a
less secure environment or in a community based program as a
condition of

*presentence detention.     In addition, on occasion it is
necessary for the court to <u>order</u> placement in a less secure
environment or in a community based program (including D.C.
Department of Corrections' programs such as work release) because
of overcrowding in the local place of detention.     A person under
these circumstances remains in "official detention", subject to
the discretion of the Attorney General and the U.S. Marshals'     *
Service with respect to the place of detention.     Those
defendants placed in a program and/or residence as a condition of
detention are subject to removal and return to a more secure
environment at the discretion of the Attorney General and the
U.S. Marshals' Service, and further, remain subject to
prosecution for escape from detention for any unauthorized
absence from the

*     program/residence.     (If there is any question as to whether
such a defendant was in fact under the jurisdiction of the U.S.
Marshals' Service, i.e., in the custody of the Attorney General,
staff shall contact the appropriate U.S. Marshal for
verification.)     Such a defendant is not eligible for any credits
while <u>released</u> from detention.

Page 1 - 14G

          In <u>Reno v. Koray,</u> 115 S.Ct 2021 (1995), the U.S.
Supreme Court held that time spent under restrictive conditions
of release (including time spent in a community treatment center
(CCC) or similar facility) was not official detention entitling
an inmate to prior custody time credit under

18 U.S.C. § 3585(b).     The court found that the interaction of
the Bail Reform Act and 18 U.S.C. § 3585(b) supported the Bureau
of Prisons' interpretation that a defendant is **either released**
(<u>with</u>

<u>no credit for time under conditions of release)</u> **or detained** (<u>with</u>
<u>credit for time in official detention).</u>

progstat                              1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions
and terms and conditions of the Matthew Bender Master Agreement.

Koray has also overruled Brown v. Rison, 895 F.2d

895 (9th Cir. 1990).   As a result, the awarding of presentence

time credit under 18 U.S.C. § 3568 for time spent under

restrictive conditions shall also be discontinued.   Brown is the

Ninth Circuit case that required the Bureau of Prisons to give

time credit to a sentence for time spent in a CCC or similar

facility.

     The Koray decision means, therefore, that time
spent in residence in a CCC or similar facility as a result of
the Pretrial Services Act of 1982 (18 U.S.C. § 3152-3154), or as
a result of a condition of bond or release on own recognizance
(18 U.S.C. § 3141-3143, former 3146), or as a condition of

parole, probation or supervised release, is not creditable to the
service of a subsequent sentence.   In addition, a release
condition that is "highly restrictive," and that includes "house
arrest", "electronic monitoring" or "home confinement"; or such

as requiring the defendant to report daily to the U.S. Marshal,

Page 1 - 14H

U.S. Probation Service, or other person; is not considered as
time in official detention.   **In short, under Koray, a defendant
is not entitled to any time credit off the subsequent sentence,**

**regardless of the severity or degree of restrictions, if such
release was a condition of bond or release on own recognizance,
or as a condition of parole, probation or supervised release.**

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Certified Translation from Montenegrin into English_____

/Coat of Arms of Montenegro/
HIGH COURT IN PODGORICA
Pom. No.: 75/21
Date: 25 June 2021

HIGH COURT IN PODGORICA, investigating judge Vladimir Novovic, with the participation of the stenographer Hida Rasic, in the case against:

a) the citizen of the United States of America, Canada and the Republic of Cuba, Noel Quintana, alias Tomas Noel Quintana Valdespino, on the grounds of the international arrest warrant of NCB Interpol Washington, USA, No.: 2021/35397 as of 02 June 2021, issued on the base of the arrest warrant of the United States District Court for the Southern District of Florida No. 21-20245-CR-UNGARO/REID as of 22 April 2021, with the purpose of extradition in order to conduct the criminal proceeding for the probable cause of having committed criminal offences *conspiracy aimed at smuggling goods into the USA* and *selling or offering plants which have been transported or sold contrary to the USA law*, in violation of Title 18 of the United States Code, Section 371, *failure to declare* in violation of Title 16 of the United States Code, Sections 3372 (f) (1) and 3373 (d) (3) (A) (i), *smuggling goods into the United States*, in violation of Title 18 of the United States Code, Sections 545 and 2, and *conspiracy to commit money laundering*, in violation of Title 18 of the United States Code, Section 1956 (h); and

b) the citizen of the United States of America and the Republic of Cuba, Kelsy Quintana, alias Kelsy Hernandez Diaz, on the grounds of the international arrest warrant of NCB Interpol Washington, USA, No.: 2021/35395 as of 03 June 2021, issued on the base of the arrest warrant of the United States District Court for the Southern District of Florida No. 21-20245-CR-UNGARO/REID as of 22 April 2021, with the purpose of extradition in order to conduct the criminal proceeding for the probable cause of having committed criminal offences *conspiracy aimed at smuggling goods into the USA and selling or offering plants which have been transported or sold contrary to the USA law*, in violation of Title 18 of the United States Code, Section 371, *failure to declare* in violation of Title 16 of the United States Code, Sections 3372 (f) (1) and 3373 (d) (3) (A) (i), *smuggling goods into the United States*, in violation of Title 18 of the United States Code, Sections 545 and 2, and *conspiracy to commit money laundering*, in violation of Title 18 of the United States Code, Section 1956 (h);

pursuant to Article 17 of the Law on International Legal Help in Criminal Matters, the United Nations Convention Against Transnational Organized Crime, the Convention on Extradition between the Kingdom of Serbia and the United States of America, and Article 166 par. 1 and par. 2 items 1 and 6, Article 167 par. 1 and 6, Article 168 par. 1 and 2 of the Criminal Code, on 25 June 2021 at 11.35 a.m. passed the following

DECISION

The defendants with the following personal data:

1. Noel Quintana, alias Tomas Noel Quintana Valdespino, Passport No. 549900265 issued by the USA, HB632633 issued by Canada, K549223 issued by the Republic of Cuba, and the Temporary Stay Permit No. 106395877 issued by the Ministry of Internal Affairs of Montenegro, Office in Budva, father's name: Luis Quintana, mother's name: Mercedes Valdespino, born on 29 December 1959 in Havana, the Republic of Cuba, the citizen of the United States of America, Canada and the Republic of Cuba, having

1

residence in Budva, Rozino, street 16, retired, married, father of three children, literate, average financial standing, Unique Personal No.: 2912959234031 as in the Temporary Stay Permit No. 106395877 issued by the Ministry of Internal Affairs of Montenegro, Office in Budva;

2. Kelsy Quintana, alias Kelsy Hernandes Diaz, Passport No. 545532432 issued by the USA and K839097 issued by the Republic of Cuba, and the Temporary Stay Permit No. 618298845 issued by the Ministry of Internal Affairs of Montenegro, Office in Budva, father's name: Jose Hernandez, mother's name: Ana Teresa Diaz, born on 02 May 1966 in Havana, the Republic of Cuba, having residence in Budva, Rozino, street 16, the citizen of the United States of America and the Republic of Cuba, by occupation an accountant, literate, married, mother of two children, average financial standing, Unique Personal No.: 0205966239035 as in the Temporary Stay Permit No. 618298845 issued by the Ministry of Internal Affairs of Montenegro, Office in Budva;

ARE HEREBY IMPOSED SUPERVISION MEASURES

- With regard to the defendant Noel Quintana, alias Tomas Noel Quintana Valdespino, on the grounds of international arrest warrant of NCB Interpol Washington, USA, No.: 2021/35397 as of 02 June 2021, issued on the base of the arrest warrant of the United States District Court for the Southern District of Florida No. 21-20245-CR-UNGARO/REID as of 22 April 2021, with the purpose of extradition in order to conduct the criminal proceeding for the probable cause of having committed criminal offences *conspiracy aimed at smuggling goods into the USA and selling or offering plants which have been transported or sold contrary to the USA law, in violation of Title 18 of the United States Code, Section 371, failure to declare* in violation of Title 16 of the United States Code, Sections 3372 (f) (1) and 3373 (d) (3) (A) (i), *smuggling goods into the United States*, in violation of Title 18 of the United States Code, Sections 545 and 2, and *conspiracy to commit money laundering*, in violation of Title 18 of the United States Code, Section 1956 (h); and

- With regard to the defendant Kelsy Quintana, alias Kelsy Hernandez Diaz, on the grounds of international arrest warrant of NCB Interpol Washington, USA, No.: 2021/35395 as of 03 June 2021, issued on the base of the arrest warrant of the United States District Court for the Southern District of Florida No. 21-20245-CR-UNGARO/REID as of 22 April 2021, with the purpose of extradition in order to conduct the criminal proceeding for the probable cause of having committed criminal offences *conspiracy aimed at smuggling goods into the USA* and *selling or offering plants which have been transported or sold contrary to the USA law*, in violation of Title 18 of the United States Code, Section 371, *failure to declare* in violation of Title 16 of the United States Code, Sections 3372 (f) (1) and 3373 (d) (3) (A) (i), *smuggling goods into the United States*, in violation of Title 18 of the United States Code, Sections 545 and 2, and *conspiracy to commit money laundering*, in violation of Title 18 of the United States Code, Section 1956 (h);

as follows:

- prohibition to leave the apartment located in Budva at the address: street 16, Rozino, in the way that the defendants herein are not allowed to leave the apartment located at the above address and the rooms that are functionally connected to the apartment, which measure shall be enforced by the Budva Police Department. Exceptionally, by means of a special decision it can be decided that the defendants may leave the apartment for a certain time period if necessary for medical treatment or due to special circumstances which may result in serious consequences for life, health and property;

- temporary seizure of travel documents of the defendant Noel Quintana, alias Tomas Noel Quintana Valdespino: USA passport no. 54990?~?? Canadian passport no.: HB632633, the



2

Republic of Cuba passport no.: K549223, and the Temporary Stay Permit No. 106395877 issued by the Ministry of Internal Affairs of Montenegro, Office in Budva, and temporary seizure of travel documents of the defendant Kelsy Quintana, alias Kelsy Hernandes Diaz, USA passport no. 545532432 and the Republic of Cuba passport no.: K839097, and the Temporary Stay Permit No. 618298845 issued by the Ministry of Internal Affairs of Montenegro, Office in Budva, which passports and temporary stay permits shall be kept in the court case files.

The defendants are hereby warned that violation of the above imposed measures may result in imposing the detention against them, whereas the said measures may last as long as the need may be, the longest until extradition.

The USA shall be notified through diplomatic channels about the supervision measures imposed herein and shall be required to request the extradition of the defendants herein.

An appeal against this Decision may be filed to the criminal panel of judges of this court in line with Article 24 par. 7 of the Criminal Procedure Law no later than 3 days following the receipt of this Decision.

The appeal shall not stay the execution of the Decision.

## Statement of Grounds



The officers of the Police Department in Podgorica brought before the above named investigating judge the following persons: Noel Quintana, alias Tomas Noel Quintana Valdespino, with the documents showing that the said person is the citizen of the United States of America, Canada and the Republic of Cuba, and that he is wanted by the USA based on the international arrest warrant of NCB Interpol Washington, USA, No.: 2021/35397 as of 02 June 2021, issued on the base of the arrest warrant of the United States District Court for the Southern District of Florida No. 21-20245-CR-UNGARO/REID as of 22 April 2021, with the purpose of extradition in order to conduct the criminal proceeding for the probable cause of having committed criminal offences *conspiracy aimed at smuggling goods into the USA* and *selling or offering plants which have been transported or sold contrary to the USA law*, in violation of Title 18 of the United States Code, Section 371, *failure to declare* in violation of Title 16 of the United States Code, Sections 3372 (f) (1) and 3373 (d) (3) (A) (i), *smuggling goods into the United States*, in violation of Title 18 of the United States Code, Sections 545 and 2, and *conspiracy to commit money laundering*, in violation of Title 18 of the United States Code, Section 1956 (h); and Kelsy Quintana, alias Kelsy Hernandez Diaz, with the documentation showing that the said person is the citizen of the United States of America and the Republic of Cuba, and that she is wanted by the USA based on international arrest warrant issued by NCB Interpol Washington, USA, No.: 2021/35395 as of 03 June 2021, issued on the base of the arrest warrant of the United States District Court for the Southern District of Florida No. 21-20245-CR-UNGARO/REID as of 22 April 2021, with the purpose of extradition in order to conduct the criminal proceeding for the probable cause of having committed criminal offences *conspiracy aimed at smuggling goods into the USA and selling or offering plants which have been transported or sold contrary to the USA law*, in violation of Title 18 of the United States Code, Section 371, *failure to declare* in violation of Title 16 of the United States Code, Sections 3372 (f) (1) and 3373 (d) (3) (A) (i), *smuggling goods into the United States*, in violation of Title 18 of the United States Code, Sections 545 and 2, and *conspiracy to commit money laundering*, in violation of Title 18 of the United States Code, Section 1956 (h).

Investigating judge has interviewed the persons named above who have confirmed their personal data stated in the Interpol arrest warrant, and who have decided to defend themselves by remaining silent. The documentation delivered along with the defendants herein contains the data about the wanted

3

persons from which it can be concluded that one defendant is the citizen of the United States of America, Canada and the Republic of Cuba, while the second defendant is the citizen of the United States of America and the Republic of Cuba, meaning that the defendants herein are not the citizens of Montenegro. This court, as the court having jurisdiction to act in the cases of international legal help and extradition of defendants, received the request form the United States of America for temporary detention of the persons named in the enacting clause herein, whereas from the Interpol arrest warrant and the said request for temporary detention it is clear that the USA has an intention to request the extradition of said persons.

The defendants herein are foreign citizens who are subject of international arrest warrant, and therefore there is a risk of them fleeing the country. However, the defendants have temporary stay in Montenegro, and the risk of fleeing may be prevented by imposing supervision measures such as prohibition to leave the apartment and temporary seizure of travel documents, the measures imposed by the court with the aim to ensure the presence of the defendants for unobstructed conduct of the criminal proceeding.

When passing this Decision, the court took into account the principle of subsidiarity which implies that detention is imposed only if the same purpose may not be achieved by imposing a different measure, as well as the decisions of the European Court for Human Rights which support this principle, Letellier against France 12369/86 as of 26 June 1991, Mamedova against Russian 7064/05 as of 01 June 2006, and Mangouras against Spain 12050/04 as of 08 January 2009.

Based on the above said, it has been decided as in the enacting clause herein.

Stenographer,
Hida Rasic

Investigating judge,
Vladimir Novovic

The accuracy of the engrossment
verified by
/signature/

/Round stamp reading:
High Court, Podgorica, Montenegro/

*The end of translation*

I, Ana Rasovic, certified interpreter for the English language, appointed by the Decision of the Minister of Justice No. 03-745-1388/17-1, hereby certify that this translation is identical to its original made in Montenegrin language.

In Podgorica, 25 June 2021

/signature/

/Round stamp reading: TUMAC ZA ENGLESKI JEZIK / ENGLISH LANGUAGE INTERPRETER-TRANSLATOR, Ana Rasovic, PODGORICA/

4

"Definitions:

. . . . .

"Official detention.  'Official detention' is defined, for purposes of this policy, as time spent under a federal detention order.  This also includes time spent under a detention order when the court has recommended placement in a less secure environment or in a community based program as a condition of presentence detention.  A person under these circumstances remains in 'official detention,' subject to the discretion of the Attorney General and the U.S. Marshals Service with respect to the place of detention.  Those defendants placed in a program and/or residence as a condition of detention are subject to removal and return to a more secure environment at the discretion of the Attorney General and the U.S. Marshals Service, and further, remain subject to prosecution for escape from detention for any unauthorized absence from the program/residence.  Such a person is not similarly situated with persons conditionally released from detention with a requirement of program participation and/or residence.

"A defendant is not eligible for any credits while released from detention.  Time spent in residence in a community corrections center as a result of the Pretrial Services Act of 1982 (18 USC § 3152-3154 [18 USCS §§ 3152-3154]), or as a result of **a condition of bail or bond** (18 USC § 3141-3143 [18 USCS §§ 3141-3143]), is not creditable as presentence time.  **A condition of bail or bond** which is 'highly restrictive,' and that includes 'house arrest', 'electronic monitoring' or 'home confinement'; or such as requiring the defendant to report daily to the U.S. Marshal, U.S. Probation Service, or other person; is not considered as time in official detention.  Such a defendant is not subject to the discretion of the U.S. Attorney General, the Bureau of Prisons, or the U.S. Marshals Service, regarding participation, placement, or subsequent return to a more secure environment, and therefore is not in a status which would indicate an award of credit is appropriate (see Randall v Whelan, 938 F.2d 522 (4th Cir. 1991) and U.S. v Insley, 927 F.2d 185 (4th Cir. 1991).  Further, the government may not prosecute for escape in the case of an unauthorized absence in such cases, as the person has been lawfully released from 'official detention.' "  (Emphasis in original.)

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Section **2246(5)** **contains** an extensive definition of the term "official detention" as follows:

(A) detention by a Federal officer or employee, or under the direction of a Federal officer or employee, following arrest for an offense; following surrender in lieu of arrest for an offense; following a charge or conviction of an offense, or an allegation or finding of juvenile delinquency; following commitment as a material witness; following civil commitment in lieu of criminal proceedings or pending resumption of criminal proceedings that are being held in abeyance, or pending extradition, deportation, or exclusion; or

(B) custody by a Federal officer or employee, or under the direction of a Federal officer or employee, for purposes incident to any detention described in subparagraph (A) of this paragraph, including transportation, medical diagnosis or treatment, court appearance, work, and recreation;

but does not include supervision or other control (other than custody during specified hours or days) after release on bail, probation, or parole, or after release following a finding of juvenile delinquency[.]

485                                          1

© 2024 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

# REQUEST FOR ADMINISTRATIVE REMEDY

7/9/24

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: __Noel Quintana__      __28864-510__      __B__      __FPC Pensacola__
        LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - INMATE REQUEST**

Good Day,

I am requesting credit for prior custody for 16 months that I spend in Official Detention in Montenegro ( Europe) while waiting for extradiction to the U.S A. From June 24,2021 to October 26,2022, as it is shown on my PSI and pursuant to 18 U  C. 3585(b).

I submitted my Foreign Jail Credit Questionnaire on April 29, 2024 and I have been waiting for a response since that date.

Please note additional details and supporting documentation attached to this BP-9 FORM.

Thanks, kind regards.

__7/16/24__
    DATE

__Noel__
                        SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

JUL 1 7 2024

Warden's Office

_____      _____
DATE                   WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE            CASE NUMBER: __1205982-F1__
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C - RECEIPT**

                                             CASE NUMBER: _____

Return to: _____
             LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____      _____
DATE                   RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR           PRINTED ON RECYCLED PAPER           BP-229(13)
                                                         APRIL 1982

TRULINCS 28864510 - QUINTANA, NOEL - Unit: PEN-B-A

----------------------------------------------------------------------------------------

FROM: 28864510
TO:
SUBJECT: ANNEX
DATE: 07/13/2024 01:15:13 PM

==========ANNEX WITH DETAILED INFORMATION ==========

I am requesting credit for 16 months spent in Official Detention waiting for extradition in Montenegro as per 18 U.S.C 3585(b). From June 24, 2021 to October 26, 2022.

I started to request the credit with the Warden (Ms. Serrano) while I was in FDC Miami. I received a Foreign Jail Credit Questionnaire which was submitted to the DSCC on 4/29/24 (copy attached to this request). I am attaching the following documents:

1) Copy of copout to FDC Warden (Ms. Serrano) and her reply submitting my request to the corresponding department in the BOP.

2) Copy of the  Foreign Jail Credit Questionnaire received from the DSCC, which was completed and summited to the DSCC on 4/29/24 by Unit Manager Ms. Gonzalez with FDC Miami.

3) 18 U.S.C 3585(b) Prior Custody. Credit for time spent in Official Detention.

4) BOP Program Statement 5880.28 pages 14G-14H. BOP definition of Official Detention allowing credit for time spent under a federal detention order in a less secured environment as a condition of presentence detention.

5) 18 U.S.C 2246(5) only statutory definition of Official Detention.

6) Copy of Montenegro Court Document ordering Detention in a less secured environment (prohibition to leave apartment) enforced by local police. Not as a condition of release or bail or bond. This was due to a local strike of lawyers and Covid-19. The detention was ordered following an Arrest Warrant issued by the U.S. Federal Government case # 1:21-cr-20245BB, the same case I was sentenced.

7) Letter from Montenegro Lawyer requesting credit for the time waiting for extradition in Montenegro.

8) Copy of PSI page #2 indicating arrest in Montenegro in June 24, 2021 and extradition to the USA October 26, 2022 (16 months in custody

================
Supporting my request for credit please note the following case law:

1) Petitioner need not have been exclusively in Federal Custody in order to receive credit under 3585(b). BOP Program statement 5880.28. Case Law: 2004 347 F. Supp. 2d 821:: Hughes v. Slade August 31, 2004. 9th Circuit.

2) In Reno v. Koray the supreme court (certiorari #8) explicitly rejected the notion the determination of whether the person was in official detention or not depending on whether he or she was subjected to "jail-type confinement". Case law 2012 470 Fed. Appx. 855:: Hans v. Warden FCI Jesup May 13, 2012. Court of Appeals 5 and 11th Circuit.

3) In Reno v. Koray 515 US 50; a release order was entered pursuant to the Bail Reform Act U.S.C 3142(c); in our case absolutely no release order was entered.

thanks regards

Noel Quintana Reg # 288-64-510

# INFORMAL RESOLUTION PROCESS

Inmate Name & Number: _NOEL QUINTANA - 288-64-510_

Date Informal Resolution Process Started: _7/1/24_

Date Informal Resolution Process Concluded: _7/5/24_

## INFORMAL RESOLUTION PROCESS

To begin the informal resolution process, briefly state the specific complaint and your recommended resolution in Section 1. Return the form to your Correctional Counselor within two (2) working days. You and your Correctional Counselor are required to make a genuine effort at informally resolving the issue. Your Unit Manager will review the efforts at informal resolution as well. If all efforts at informal resolution fail, you will be issued a BP-9 form in which you may proceed in accordance with our policies and outlined in the institution supplement.  The informal resolution process is not in any manner, intended to prohibit you from pursuing complaints through this program. It is intended to ensure that all parties attempt to informally resolve an issue prior to initiating the formal process of filing an Administrative Remedy.

## SECTION 1

A.  Briefly state your specific complaint and recommended solution:(Please Print)

Good Day. I Am REQUESTING CREDIT FOR PRIOR CUSTODY FOR 16 months SPENT IN OFFICIAL DETENTION FROM 6/24/21 to 10/26/22 As it is shown on my PSI and pursuant to 18 U.S.C 3585(b). I was detained in Montenegro (Europe) while waiting FOR EXTRAPITION to the U.S.A Considering THE IMPACT OF THESE 16 months on THE REMAINDER OF MY SENTENCE. A PROmpt Processing is NEEDED. PLEASE NOTE ADDITIONAL DETAILS and supported documentation ATTACHED to this BP8 FORM. Solution: the 16 month credit to be APPLIED to THE REMAINDER OF MY SENTENCE. THANKS, KIND REGARDS

## SECTION 2

B. Correctional Counselor's Informal Resolution
   Efforts/Comments:

As discussed at your program review the DSCC has indicated they are waiting for a response to your request.

C. Unit Manager's Review/Comments

Per your CSW's response, DSCC in reviewing your request. You will be advised when a determination has been reached and disseminated.

Counselor's Signature/ Print Name

7/9/24

Unit Manager's Signature/Print Name

Date BP-9 Issued:    7/10/24

*THIS FORM MUST BE ATTACHED TO ANY BP-9 FORWARDED FOR INVESTIGATION AND
RESPONSE. INFORMAL RESOLUTION MUST BE ATTEMPTED IN A TIMELY MANNER.*

BP-A0148
JUNE 10

INMATE REQUEST TO STAFF CDFRM

U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) R. MEADOWS / CASE MANAGER B | DATE: 6/24/24 |
|---|---|
| FROM: Noel Quintana | REGISTER NO.: 28864510 |
| WORK ASSIGNMENT: 3585(b) Credit For Prior Custody | UNIT: B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.

Good Day Mr R Meadows / Case Manager Unit B.

I Am requesting credit For prior custody For 16 months that I spent in
Official Detention in Montenegro (Europe) while waiting For extradition to the
U.S.A, From June 24, 2021 to October 26, 2022 as shown on my PSI
And pursuant to 18 U.S.C. 3585(b).
Please note additional details And supporting documents Attached to this
paper request. thanks, kind regards.     Noel

(Do not write below this line)

DISPOSITION:

copout 6/24/24

_____          _____
Signature Staff Member                    Date
_____
Record Copy - File; Copy - Inmate

PDF                        Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER       SECTION 6

ID 120917?

(FSA Eligibility Date)

Copout
BP 8 a Reply
BP 9 & REPly
BP 10 NoResponse but
It WAS Received
BP 11 & Reply

AO 236B
(Rev. 01/17)

# FACILITY ACCESS CARD (FAC) CARDHOLDER AGREEMENT
## Certificate of Acceptance and Acknowledgment of Responsibilities

**Purpose:**
Your organization has subscribed to certain FAC authentication, encryption and digital signature services. Accordingly, as an employee or contractor, you have been authorized to receive a FAC Card with digital certificates and corresponding public keys and private keys. The private keys will enable you to authenticate yourself to gain access to facilities or systems, digitally sign documents, and to decrypt data that has been encrypted for you. Other persons, organizations and/or applications will use the corresponding public keys to authenticate you for access control purposes, to verify your digital signature, or to encrypt data so only you can decrypt it.

**Credential Type:** *(Select one)*

☐ Initial Card Issuance    ☐ Certificate Recovery    ☐ Information Update

☐ Card Revocation    ☐ Card Renewal    ☐ Card Reissuance

**Certificate Accepted By (Cardholder):**

Cardholder's Name: _____

Unique Identification (Scanned in IDMS): _____

Organization (Unit): _____

Work Email Address: _____

Work Telephone Number: _____

**Your Obligations:**
As FAC Cardholder, you agree to the following:

1. You will comply with Your organization's security policies, rules and regulations regarding the use of the FAC which includes the protection and safeguarding of FAC and PIN code in a secure manner and in a manner including:
   - FACs will be protected when not in use (e.g., on your person, in a locked drawer, etc.),
   - Once activated (the PIN code has been entered), your FAC will not be left unattended until it is deactivated (e.g., removed from the reader),
   - PIN codes will not be shared or divulged to others
   - PIN codes shall be memorized and will not be recorded
   - FACs and/or PIN codes will not be lent, shared or provided to others
2. You will use the FAC provided to you by your organization only for business-related transactions;
3. You acknowledge that the use of a FAC private key will be deemed to be an acceptance of the related public key and associated certificate;
4. As soon as you become aware of, or suspect the compromise of your FAC or PIN code you will promptly report this to your organization.
5. You will make true representations at all times regarding the information in your FAC and the information provided to your employer. You will notify your employer if your personal information changes (name change, organization change, email address change, etc.) throughout the duration of your use so the FAC information is correctly updated; and

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: OCTOBER 16, 2024

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : NOEL QUINTANA, 28864-510
      PENSACOLA FPC     UNT: 1 GP     QTR: B04-075L
      P.O. BOX 3933
      PENSACOLA,  FL 32516


FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 1209177-A1     CENTRAL OFFICE APPEAL
DATE RECEIVED  : OCTOBER 15, 2024
SUBJECT 1      : FSA ELIGIBILITY
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE
                 WRONG LEVEL.  YOU SHOULD HAVE FILED AT THE
                 INSTITUTION, REGIONAL OFFICE, OR  CENTRAL
                 OFFICE LEVEL.

REJECT REASON 2: SEE REMARKS.

REMARKS        : YOU MUST APPEAL TO THE BP10 (REGION) LEVEL BEFORE
                 PROCEEDING TO THE BP11.


RECEIVED

OCT 25 2024

Warden's Office


FILED USDC FLND PN
NOV 18 '24 AM 11:42

U.S. Department of Justice

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: QUINTANA NOEL        28864 510        B        FPC PENSACOLA
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A - REASON FOR APPEAL**

good Day,

I Am Appealing The decision of The BOP to DENY My FSA Eligibility DATE TO start February 14, 2024, the DAY that I WAS SENTENCED And Received in Custody waiting to be TRANSPORTED To My Designated Facility. Please see details on THE continuation PAGE. THANKS, Regards

10/8/24
DATE

Neel
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____
DATE                                          GENERAL COUNSEL

**ORIGINAL: RETURN TO INMATE**                 CASE NUMBER: _____

**Part C - RECEIPT**
                                               CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____
DATE                                          SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)

TRULINCS  28864510 - QUINTANA, NOEL - Unit: PEN-B-A

-----------------------------------------------------------------------------------------

FROM: 28864510
TO:
SUBJECT: FSA eligibility date 2/14/24. BP11
DATE: 10/08/2024 01:40:42 PM

=======BP 11. Continuation Page with additional details =======

BOP Central Office                                    October 8, 2024

I am appealing the decision of the BOP denying my FSA eligibility date to start the date that I was sentenced and received in BOP custody waiting to be transported to my designated facility, which was February 14, 2024.

Specifically, I am requesting 98 days accruing FTC's from February 14, 2024, the date of my sentence, and the date that I was received in custody at BOP FDC Miami , where I was already held in pretrial detention, until May 22, 2024; the day that I was sent in transit to BOP FDC Tallahassee, on my way to my designated facility BOP FPC Pensacola, where I am currently serving my sentence. I spent 14 days in transit at BOP FDC Tallahassee. During the time in question I was never out of the BOP custody for a full day,

My FSA eligibility date should start 2/14/2024, the date of my sentence and I should have been in earning status until 5/22/2024 when my in-transit to my designated facility started. I was then in off earning status for 14 days in FDC Tallahassee until I arrived at FPC Pensacola, when my earning status started again.

During the 98 days in question that I was in custody at FDC Miami, waiting to be transported to my designated facility, I had a good behavior, no disciplinary infractions, I did my Trulincs risk assessment survey, never refused to participate in any programing that was available to me, volunteered with psychology services for suicidal watch as well as participated in faith-based services; my recidivism has always been at minimum level.

The reply from the warden to my BP-9 (here attached) and which I received on 8/27/24, says that..."during the time-period in question, you were in an in-transit/holdover status and in a facility not under the custody and supervision of the Federal Bureau of Prisons. Therefore, during the time-period in question you were ineligible to accrue FTCs. Upon arrival at your designated institution, you became eligible to accrue and apply Earned Time Credits and they have been appropriately calculated. Based on the above, your request for administrative remedy is denied.

That must be a mistake, because during the time period in question (98 days after sentencing from 2/12/24 to 5/22/24) I was under custody at a BOP facility which can be easily verified. Furthermore there is no reference in the FSA statute requiring me to arrive at my designated facility to become eligible to earn FTCs.

Section 3632(d)(4)(B)(ii) points to 18 U.S.C. 3585(a) to provide definition of when a sentence commences, which specifies that the sentence commences the date that the defendant is received in custody awaiting transport to his initial BOP-designated facility. Therefore my FSA eligibility status should start the day that my sentence commenced and that I was received in custody waiting to be transported to my BOP-designated, in my case 2/14/24. Does not say that I have to wait until I arrive to my designated facility as it is mentioned in the reply from the warden.

I agree that the 14 days time interval that i spent at FDC Tallahassee while in transit to FPC Pensacola do not accrue FTCs but the other 98 days do and should have earned about 30 days of FTCs for me.

Note: on 4/9/24, I had an approximate 4 hours escorted trip to see a cardiologist Doctor while at FDC Miami, but it was not a full day trip. I returned to FDC Miami on the same day.

Based on the above, I respectfully request the BOP Central Office to please evaluate my request and grant me the 30 days of FTCs.

Thanks, regards

Noel Quintana / Reg: 28864510
FPC Pensacola
Attached: Electronic copout, BP8 and BP9 with their responses. BP10 filed but no response was received after +30 days.





9589 0710 5270 1397 2515 84

9589 0710 5270 1397 2515 84

U.S. Postal Service
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

UNIT 6

⇔28864-510⇔
Noel Quintana Sr.
Federal Prison Camp Pensacola
P O Box 3949
Pensacola, FL 32516
United States

⇔28864-510⇔
B O P Regional Director
Building 2000
3800 CAMP Creek PKWY SW
Southeast Regional Office
Atlanta, GA 30331-6226
United States

TRULINCS  28864510 - QUINTANA, NOEL - Unit: PEN-B-A

--------------------------------------------------------------------------------------------------------

FROM: Abackp, Abel
TO: 28864510
SUBJECT: [george]
DATE: 09/03/2024 03:21:11 PM

USPS 9589071052701397251584, Delivered, Left with Individual 09/03/2024 2:13pm ATLANTA GA 30331 Reply STOP to
cancel

U.S. Department of Justice

Federal Bureau of Prisons

Regional Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: QUINTANA NOEL     28864510     B     FPC PENSACOLA
       LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

Part A - REASON FOR APPEAL

Good Day

I am Appealing the denial of my BP-9 Requesting to change my FSA
Eligibitity Date to THE DATE OF MY sentence 2/14/24. PLEASE
SEE ANNEX FOR MORE DETAILS. THANKS, REGARDS

8/28/24
   DATE

Noel
SIGNATURE OF REQUESTER

Part B - RESPONSE

DATE

REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                                CASE NUMBER: _____

Part C - RECEIPT

                                                          CASE NUMBER: _____

Return to: _____     _____     _____     _____
           LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

TRULINCS  28864510 - QUINTANA, NOEL - Unit: PEN-B-A

--------------------------------------------------------------------------------------------------------

FROM: 28864510
TO:
SUBJECT: FSA eligibility date Region
DATE: 10/08/2024 02:04:32 PM

======ANNEX TO BP-10 ====
BOP Regional Director                                                    August 28, 2024
Southeast Region, Atlanta GA

I am appealing the reply to my BP-9 denying me to change my FSA eligibility date to start the date that I was sentenced and received in BOP custody waiting to be transported to my designated facility.

Specifically, I am requesting 98 days accruing FTC's from February 14, 2024, the date of my sentence, and the date that I was received in custody at BOP FDC Miami, where I was already in pretrial detention, until May 22, 2024, the day that I was sent in transit to BOP FDC Tallahassee, on my way to my designated facility, BOP FPC Pensacola, where I am currently serving my time. I spent 14 days in transit at BOP FDC Tallahassee. During the time in question I was never out of BOP custody for a full day.

My eligibility date should start 2/14/24, the date of my sentence, and I should have been in earning status until 5/22/2024 when my in-transit to my designated facility started. I was off earning status for 14 days in FDC Tallahassee until I arrived to FPC Pensacola, when my earning status started again.

During my time in custody at FDC Miami, waiting to be transported to my designated facility I had a good behavior, no disciplinary infractions, I did my Trulincs risk assessment survey, I never refused to participate in any programing activity available to me, volunteered with psychology services for suicidal watch as well as participated in faith-based services; my recidivism has always been at minimum level.

The reply of the Warden to my BP-9 (here attached) and which I received on 8/27/24, says that.."during the time-period in question, you were in an in-transit/holdover status and in a facility not under the custody and supervision of the Federal Bureau of Prisons. Therefore, during the time-period in question you were ineligible to accrue FTCs. Upon your arrival at your designated institution, you became eligible to accrue and apply Earned Time Credits and they have been appropriately calculated. Based on the above, your request for administrative remedy is denied.

That must be a mistake, because during the time period in question (from 2/14/24 to 5/22/24) I was always under custody at a BOP facility, which can be easily verified. Furthermore there is no reference in the FSA statute requiring me to arrive at my designated facility to become eligible to earn FTCs.

Section 3632(d)(4)(B)(ii) points to 18 U.S.C 3585(a) to provide a definition of when a sentence commences, which specifies that the sentence commences the date that the defendant is received in custody awaiting transport to his initial BOP-designated facility. Therefore my FSA eligibility date should start  the day that my sentence commenced and I was received in custody waiting to be transported to my designated facility, in my case 2/4/2024. Does not say that I have to wait until I arrive to my designated facility to become eligible as the warden mentioned in her reply.

I agree that the 14 days time interval that I spent at  FDC Tallahassee while in transit from FDC Miami to FPC Pensacola, do not accrue FTCs but the other 98 days do, and should have accrued about 30 days of FTCs.

Note: on 4/9/2024, I had an approximate 4 hours escorted trip to see Cardiologist Doctor while at FDC Miami, but it was a less than a full day trip. I returned to FDC Miami the same day.

Based on the above, I respectfully request the Regional Office to please evaluate my request and grant me the 30 days of FTCs.

Thanks, regards

Noel Quintana/ Reg. 28864510
FPC Pensacola
Attached:
Electronic copout, BP8, BP9 and their replies.

**FEDERAL PRISON CAMP (FPC), PENSACOLA**
**PART B - RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY**
**1209177-F1**

This is in response to your Request for Administrative Remedy received August 14, 2024; wherein you requested the application of First Step Act (FSA) Federal Time Credits (FTCs) from the date of your sentencing (February 14, 2024) through the date you arrived at your designated institution (June 5, 2024).

An investigation into your request revealed that pursuant to Program Statement 5410.01. First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4) Subsection 7 (page 10): Limitations on Earning of FTC's, "Despite being eligible to earn FTCs, there are situations where an inmate is unable or unwilling to participate in EBRR programs or PAs, and therefore cannot earn FTCs. Such circumstances may include, but are not limited to, the following:

- Placement in Disciplinary Segregation status;
- Designation status outside the institution (e.g., an outside medical trip or escorted trip, in-transit or at an in-transit facility, a furlough for the full day, etc.);
- Placement in the custody of another jurisdiction (e.g., on state or federal writ, transfer to state custody for service of sentence, transfer to another federal agency, etc.);
- Placement in mental health/psychiatric holds;
- Detention as a material witness or for civil contempt;
- Placement in civil commitment; or
- "Opting out" (choosing not to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment)."

During the time-period in question, you were in an in-transit/holdover status and in a facility not under the custody and supervision of the Federal Bureau of Prisons. Therefore, during the time-period in question you were ineligible to accrue FTCs. Upon your arrival at your designated institution, you became eligible to accrue and apply Earned Time Credits and they have been appropriately calculated.

Based on the above, your request for Administrative Remedy is denied.

If you are not satisfied with this response, you may appeal to the Regional Director, Southeast Regional Office, 3800 Camp Creek Parkway, S.W., Building 2000, Atlanta, Georgia 30331-6226. Your appeal must be received in that office within 20 days from the date of this response.

_____                    8/16/2024
S. Saulsberry, Warden                       Date

U.S. DEPARTMENT OF JUSTICE

REQUEST FOR ADMINISTRATIVE REMEDY

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: QUINTANA NOEL        28864510        B        FPC PENSACOLA
       LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - INMATE REQUEST**

Good Day,

I AM REQUESTING THE BOP TO RECALCULATE MY FIRST Step Act TIME CREDITS to INCLUDE MY Eligibitity DATE beginning FEBRUARY 14, 2024, Which WAS THE DATE OF MY SENTENCE AND THE DAY THAT I WAS RECEIVED IN CUSTODY AFTER SENTENCING AT FDC MIAMI, WAITING to be TRANSPORTED TO MY designated BOP FACILITY AT FPC PENSACOLA. PLEASE SEE ADDITIONAL DETAILS IN ANNEX to BP-9 ATTACHED. thanks, Regards

8/13/24
DATE

Noel
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

AUG 14 2024

Warden's Office

_____          _____
DATE                                  WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE          CASE NUMBER: 1209177-F1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____                    _____
DATE                                           RECIPIENT'S SIGNATURE (STAFF MEMBER)

TRULINCS  28864510 - QUINTANA, NOEL - Unit: PEN-B-A

---------------------------------------------------------------------------------------

FROM: 28864510
TO:
SUBJECT: Requesting FSA eligibility date 2/14/24.
DATE: 08/12/2024 05:40:46 PM

======== ANNEX TO BP-9 ==========

                                        August 12, 2024
Good Day,

I am requesting the BOP to recalculate my First Step Act Time Credits to include my eligibility date beginning February 14, 2024, which was the date of my sentence and the day that I was received in custody after sentencing at FDC Miami, waiting to be transported to my designated BOP facility at FPC Pensacola. Notably, I was already detained in pretrial detention at FDC Miami.

During my time in custody at FDC Miami, I had a good behavior, no disciplinary infractions, never refused to participate in any programing available to me, volunteered with psychology services for suicidal watch as well as participated in faith-based services; my recidivism risk assessment has always been maintained at minimum level. I also completed my risk assessment survey while in FDC Miami.

Solution: Please update my starting date for earning FSA time credits to show the date of my sentence, 2/14/24 not the current 6/5/24.

thanks, regards

Noel Quintana
Reg. 28864-510

Attached - copy of electronic copout, BP-8 with their respective replies.

## INFORMAL RESOLUTION PROCESS

Inmate Name & Number: _Noel Quintana 28864510_

Date Informal Resolution Process Started: _7/26/24_ ~~7/26/24~~ _Received 8/6/2024_

Date Informal Resolution Process Concluded: _____

### INFORMAL RESOLUTION PROCESS

To begin the informal resolution process, briefly state the specific complaint and your recommended resolution in Section 1. Return the form to your Correctional Counselor within two (2) working days. You and your Correctional Counselor are required to make a genuine effort at informally resolving the issue. Your Unit Manager will review the efforts at informal resolution as well. If all efforts at informal resolution fail, you will be issued a BP-9 form in which you may proceed in accordance with our policies and outlined in the institution supplement.  The informal resolution process is not in any manner, intended to prohibit you from pursuing complaints through this program. It is intended to ensure that all parties attempt to informally resolve an issue prior to initiating the formal process of filing an Administrative Remedy.

### SECTION 1

A.  Briefly state your specific complaint and recommended solution:(Please Print)

> Good Day
> I am Requesting the BOP to recalculate my FSA time credits to include my eligibility date beginning February 14, 2024 which was the date of my sentence and that I was received in custody. Please see Annex with additional details
>
> Solution: Please update my starting date for earning FSA time credits to show the date of my sentence 2/14/24.
>        Thanks, Regards

PEN 1330.18J          ATTACHMENT A, PAGE 2          05/1/2021

## SECTION 2

B.  Correctional Counselor's Informal Resolution
    Efforts/Comments:

> Upon arrival at your designated institution, you become eligible to accrue and apply earned time credits. You arrived at your designated facility FPC Pensacola on 06/05/2024 and were reviewed. You were placed in FTC Eligible Status on 06/05/2024.

C.  Unit Manager's Review/Comments

> You must be in an earning status to be eligible to accrue FTCs. (ADES) You became eligible on 6/5/24.

_____   R. Meadows
Counselor's Signature/ Print Name

_____   E. Manula
Unit Manager's Signature/Print Name

Date BP-9 Issued: ___8/9/24___

*THIS FORM MUST BE ATTACHED TO ANY BP-9 FORWARDED FOR INVESTIGATION AND RESPONSE. INFORMAL RESOLUTION MUST BE ATTEMPTED IN A TIMELY MANNER.*

TRULINCS  28864510 - QUINTANA, NOEL - Unit: PEN-B-A

---------------------------------------------------------------------------------

FROM: 28864510
TO: Unit Mgt
SUBJECT: ***Request to Staff*** QUINTANA, NOEL, Reg# 28864510, PEN-B-A
DATE: 07/21/2024 01:21:37 PM

To: Mr. Meadows
Inmate Work Assignment: FSA Date

Good day Mr. Meadows,
I am requesting the BOP to recalculate my First Step Act Time Credits to include my eligibility date beginning February 14, 2024, which was the date of my sentence and the day that I was received in custody after sentencing at FDC Miami, waiting to be transported to my designated BOP facility, FPC Pensacola. Notably, I was already detained in pretrial detention at FDC Miami.
During my time in custody at FDC Miami, I had a good behavior, no disciplinary infractions, never refused to participate in any programing available to me, volunteered with Psychology Services for suicidal watch as well as participated in faith-bases services. In addition, my recidivism risk assessment has always been maintained at minimum level.
Proposed Solution: Please update my starting date for earning FSA time credits to show the date of my sentence, 2/14/24 not the current 6/5/24.
thanks, kind regards

Your credits do not start until you are at your designated Facility