IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

NOEL QUINTANA,
    Reg. No. 28864-510,

    Petitioner,

v.                                       Case No.: 3:24cv583-LC-MAL

SHERI SAULSBERRY,
WARDEN, FPC PENSACOLA,

    Respondent.
_____/

**ANSWER IN OPPOSITION TO § 2241 PETITION (Doc. 2)**

COME NOW the Respondent, by and through the undersigned Assistant United States Attorney, filing her answer in opposition to the § 2241 petition filed in the above-styled cause (Doc. 2). In support of her answer suggesting the petition should be denied, Respondent would show as follows:

I.    **SUMMARY OF ALLEGATIONS**

Petitioner, Noel Quintana #28864-510, filed a *pro* se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging the computation of his sentence by the Bureau of Prisons (BOP).  Specifically, he claims the BOP has unlawfully denied him foreign jail credit.  Petitioner is also challenging his FSA

eligibility date.

## II.   SUBJECT MATTER JURISDICTION

Section 2241 is the vehicle through which a prisoner may (1) challenge the manner in which his sentence is being executed; (2) challenge the revocation of his parole; or (3) claim he is being held after the expiration of his sentence. *See United States v. Addonizio*, 442 U.S. 178, 185-86 (1979); *Martorana v. United States,* 873 F.2d 283, 285 (11th Cir. 1989) (holding that when a prisoner challenges the execution of his sentence by the parole board, his remedy is through a 28 U.S.C. § 2241 petition for writ of habeas corpus). Thus, a challenge to the manner in which a prisoner's sentence is implemented is properly construed as a petition for habeas relief under 28 U.S.C. § 2241. *See Chambers v. United States,* 106 F.3d 472, 474 (2nd Cir. 1997) ( challenge to the execution of a sentence. . . is properly filed pursuant to Section 2241). Petitioner Quintana is currently housed at FPC Pensacola, a facility within the Northern District of Florida, and he is challenging the computation of his federal sentence. Accordingly, this action is appropriately filed as a habeas petition in this district.

## III.   <u>PARTIES</u>

### PETITIONER

Petitioner Noel Quintana is a federal inmate in designated to FPC Pensacola. He entered FPC Pensacola on June 5, 2024, to begin service of his 57-month

sentence in Case Number 1:21-CR-20245, out of the Southern District of Florida, for violation of Conspiracy against the United States, Smuggling, and Failure to Declare. Petitioner has a projected release date of September 13, 2026, via First Step Act Release. See, Exhibit 1, Declaration of Yvonne Gordon (Hereinafter, Gordon Declaration).

### RESPONDENT

The proper respondent to a habeas petition challenging physical confinement is the warden at the facility where the prisoner is being held. 28 U.S.C. § 2242 (application for writ shall allege name of person who has custody over petitioner); 28 U.S.C. § 2243 (writ or order to show cause shall be directed at person having custody over person detained); *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Petitioner has properly named the Warden at FPC Pensacola, Warden Saulsberry as Respondent.

### IV.   VENUE AND IN PERSONAM JURISDICTION

Section 2241's venue provisions indicate that the petition may be brought in the district court serving the institution where the petitioner is confined. 28 U.S.C. § 2241(d). *See also, United States v. Hayman*, 342 U.S. 205, 213 (1952) (habeas petition requires presence of the prisoner within the territorial jurisdiction of the District Court. Petitioner is presently confined at FPC Pensacola, an institution

within the Northern District of Florida. Consequently, venue is proper.

## V.    FACTS – COMPUTATION OF PETITIONER'S FEDERAL SENTENCE

On June 24, 2021, Petitioner was arrested in Montenegro on an outstanding warrant and was detained pending extradition. Office of International Affairs confirmed Petitioner was placed on home confinement on June 25, 2021, Petitioner was ban from leaving apartment by the Ministry of Justice of Montenegro until October 26, 2022, when he was handed over to authorities of the United States of America. Gordon Declaration at ¶3.

On October 26, 2022, Petitioner was extradited from Montenegro to the United States. Gordon Declaration at ¶4.

On February 14, 2024, Petitioner was sentenced in the United States District Court for the Southern District of Florida, Case Number 1:21-CR-20245-BB(1) to 57 months for Conspiracy Against the United States, Smuggling, and Failure to Declare. The Court ordered, "Defendant is to receive credit for time served from October 26, 2022June 12, 2023, an order for writ of habeas corpus ad prosequendum (writ) was issued by the United States District Court for the Southern District of Florida, Case No. 23-CR-14018. Gordon Declaration at ¶5.

On January 8, 2024, Petitioner submitted a request to his sentencing judge for foreign jail credit from June 25, 2021, through October 25, 2022. The request was entered into his criminal case 1:21-Cr-20245, case docket, as docket entry 120.

Gordon Declaration at ¶6.

On June 24, 2024, the Bureau of Prisons' Designation and Sentence Computation Center reviewed Mr. Quintana's documents in the official records, and determined he was not authorized credit under 18 U.S.C. §3585(b), for the time he spent in Montenegro. A memorandum was placed into Mr. Quintana's sentencing file noting the Office of International Affairs confirmed Mr. Quintana was placed on home confinement from June 25, 2021, and a ban on leaving his apartment was imposed that same day until October 26, 2022. It was determined Mr. Quintana's home confinement placement did not constitute official detention and was ineligible for jail credit. Gordon Declaration at ¶7.

Title 18 U.S.C. § 3585(b), and Bureau of Prisons Program Statement 5880.28, <u>Sentence Computation Manual (CCCA of 1984</u>), Title 18, U.S.C. 3585(B), states in part, "a release condition that is "highly restrictive," and that includes "house arrest", "electronic monitoring" or "home confinement"; or such as requiring the defendant to report daily to the U.S. Marshal, U.S. Probation Service, or other person; is not considered as time in official detention." Accordingly, the foreign jail credit the Petitioner is seeking from June 24, 2021, through October 25, 2022, cannot be applied to the Petitioner's federal term as it was not time spent in official detention.

Petitioner's sentence computation has been computed as directed by federal statute, and Bureau of Prisons Program Statement 5880.28, <u>Sentence Computation</u>

Manual (CCCA of 1984), with a commencement date of February 14, 2014, with jail credit from October 26, 2022, through February 13, 2024. He has a projected released date of September 13, 2026, via First Step Act Release. He has received all jail credit due. Gordon Declaration at ¶10.

VI. **ANALYSIS**

   A. **THE MOTION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Petitioner alleges he has been denied prior custody credit, for time he claims he spent in foreign official detention. He is mistaken and is not entitled to any further credit towards his federal sentence.

After sentencing, the Attorney General, through the Bureau of Prisons, is responsible for administering the sentence. 18 U.S.C. § 3621(a); *United States v. Wilson*, 503 U.S. 329, 331 (1992) (*citing* 3621(a)). In doing so, the Attorney General, through the Bureau of Prisons, is responsible for administering section 3585(b) and determining when federal inmates are entitled to prior custody credit. *Wilson*, 503 U.S. at 333-35; *Dawson v. Scott*, 50 F.3d 884, 889 (11th Cir. 1995) (*citing Wilson*).

Consequently, the Bureau of Prisons has policies governing the calculation of inmate sentences and granting of prior custody credit. See Program Statement No. 5880.28, Sentence Computation Manual (CCCA of 1984) (Sept. 20, 1999) (PS 5880.28). In *Wilson*, the Supreme Court acknowledged the validity of PS 5880.28.

*Wilson*, 503 U.S. at 335-36 (noting Bureau of Prisons developed detailed procedures and guidelines for determining prior custody credit and prisoners are afforded administrative review of credit computations).

### **Prior Custody Credit**

The awarding of jail time credit is governed by 18 U.S.C. § 3585(b), which provides in pertinent part:

> **(b) Credit for prior custody.** --A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–
>
> **(1)** as a result of the offense for which the sentence was imposed; or **(2)** as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; **that has not been credited against another sentence**.

18 U.S.C. § 3585(b) (2016) (emphasis added).

Petitioner received 476 days of jail credit for the time frame beginning October 26, 2022, the day he was extradited to the United States, through February 13, 2024, the day before he was sentenced in federal court. See, Exhibit 1, Gordon Declaration. The credit he seeks while he was on home detention in Montenegro, is not considered official detention pursuant to Title 18 U.S.C. § 3585(b), and Bureau of Prisons Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984). Title 18, U.S.C. 3585(B), states in part, "a release condition that is "highly restrictive," and that includes "house arrest", "electronic monitoring" or "home

confinement"; or such as requiring the defendant to report daily to the U.S. Marshal, U.S. Probation Service, or other person; is not considered as time in official detention."

Petitioner has received all eligible prior custody credit in accordance with both Program Statement 5880.28, <u>Sentence Computation Manual (CCCA of 1984)</u>, and Title 18, United States Code, § 3585(b).  See, Gordon Declaration.

**First Step Act (FSA)**

The FSA provides that eligible inmates may earn FTCs for successfully participating and completing approved evidence-based recidivism reduction (EBRR)[1] programs or Productive Activities (PAs).[2] The FSA prohibits Inmates from receiving credit prior to its enactment, prior to the commencement of the Inmate's sentence, or if the INMATE is serving a sentence for a disqualifying offense or has a disqualifying prior conviction. The FSA allows qualifying Inmates to apply FTCs toward prerelease community-based placement (i.e., Residential Reentry Center (RRC) and/or home confinement (HC) and toward transfer to supervised release.

---

[1] A structured group or individual activity that evidence has shown to reduce or likely reduce your rate of returning to prison.
[2] A group or individual activity that enhances skills to address identified needs. PAs can promote productivity and aid with maintaining or working toward minimum or low risk levels.

*Initial Risk/Needs Assessment*

By way of background, the FSA required the Attorney General to develop a risk and needs assessment system to be used by BOP to assess the recidivism risk and criminogenic needs of all federal prisoners and to place prisoners in recidivism reducing programs and productive activities to address their needs and reduce this risk. 18 U.S.C. § 3632. The risk and needs assessment system ("Assessment") is designed to be used to: determine an Inmate's recidivism risk, assess the Inmate's risk of violent or serious misconduct, determine the appropriate type and amount of EBBR programming appropriate for each inmate, periodically reassess an Inmate's recidivism risk, reassign an inmate to appropriate EBRR programs or PAs, determine when to provide the inmate with incentives and rewards for successful participation in EBRR and PAs, and determine when the inmate is ready to transfer into prerelease custody or supervised release. 18 U.S.C. § 3632(a). The Assessment is also intended to provide guidance on the type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on his or her specific criminogenic needs. 18 U.S.C. § 3632(b). The Assessment is designed to provide information on the best ways the BOP can tailor programs to the specific criminogenic needs of an inmate so as to effectively lower each Inmate's risk of recidivism. 18 U.S.C. § 3632(b). The Attorney General published the Assessment, known as the Prisoner Assessment Tool Targeting

Estimated Risks and Needs ("PATTERN"), on July 19, 2019.

Ordinarily within 28 days of an Inmate's arrival to his/her designated institution, an initial needs assessment process is completed. This process consists of participation from the inmate and Unit Team. As part of the process, the inmate completes a "Standardized Prisoner Assessment for Reduction in Criminality" (SPARC-13) through the inmate-computer system (TRULINCS). The SPARC-13 assessment determines an individual's specific needs and helps identify which programs may help develop habits towards living a healthy, productive lifestyle upon release. The Inmate's completion of the SPARC-13 is necessary to determine which BOP programs can best assist the individual and allow him/her to be eligible for various FSA incentives including the ability to earn up to 365 FTCs toward early transfer to supervised release, with all additional FTCs counting toward time spent in prerelease placement. In tandem with the SPARC-13, the Unit Team calculates the Inmate's risk level using the PATTERN tool. PATTERN determines an individual's likelihood of being rearrested or returning to prison and assigns one of the following risk levels; High, Medium, Low, and Minimum. An Inmate's needs/risks are re-assessed at 180-day intervals, as part of the routine program review (team meeting) process, and different program recommendations are made when an Inmate's needs change. Id. At each program review, or team meeting, the Inmate's Unit Team will recommend EBBR

programs and/or PAs based on the Inmate's Needs Assessment.

*FSA Eligibility to Earn FTCs*

All Inmates undergo the initial risk and needs assessment process and received targeted programming recommendations, however an inmate must meet the statutory criteria in 18 U.S.C. § 3632(d)(1), in order for his/her successful participation in the recommended programming to translate into the earning of FTCs. 18 U.S.C. § 3632(d) provides:

> (1) Eligible to earn FSA Time Credits. An inmate who is eligible to earn FSA Time Credits is an eligible inmate for the purposes of this subpart. Any inmate sentenced to a term of imprisonment pursuant to a conviction for a Federal criminal offense, or any person in the custody of the Bureau, is eligible to earn FSA Time Credits, subject to the exception described in paragraph (d)(2) of this section.
>
> (2) Exception. If the inmate is serving a term of imprisonment for an offense specified in 18 U.S.C. 3632(d)(4)(D), the inmate is not eligible to earn FSA Time Credits.

Petitioner is eligible to earn FTCs pursuant to § 3632(d), since he is serving a term of imprisonment for a federal offense, 18 U.S.C. §371 and §545, "Conspiracy against the United States and Smuggling," and 16 U.S.C. § 3372, Failure to Declare," and these offenses are not listed as disqualifying offenses under 18 U.S.C. § 3632(d)(4)(D).

In general, an eligible inmate who successfully completes EBBR programming or PAs, shall earn time credits as follows:

> (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
> (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C. 3632(d)(4)(A).

Petitioner has maintained a minimum or low risk assessment for over 2 consecutive assessments and is currently earning FTCs in the amount of 15 FTCs per 30-day period of successful programming. See Exhibit 2, FSA Time Credit Assessment (12-30-2024).

*How to Earn FTCs*

**The following section directly addresses the issue raised by Petitioner – the date he became eligible to begin earning FTCs.**

28 C.F.R. § 523.42(a) sets forth when an inmate can earn FTCs:

> An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served).

28 C.F.R. § 523.42(a) must be read in conjunction with 18 U.S.C. § 3632(d)(4)(B), which explicitly states that:

> "[a] prisoner may not earn time credits . . . for an evidence-based recidivism reduction program that the prisoner successfully completed –
>
> (i) prior to the date of the enactment of this subchapter; or

> (ii) **during official detention prior to the date that the prisoner's sentence commences under [18 U.S.C. §] 3585(a)."**

18 U.S.C. § 3632(d)(4)(B) (emphasis added).

It is the BOP's current position that a sentence commences when "the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of a sentence at, the **official detention facility at which the sentence is to be served**." 18 U.S.C. §3585(a) (emphasis added). In turn, the "**official detention facility at which the sentence is to be served**" is defined in the regulations as "the **designated** [BOP] facility where the sentence will be served." 28 C.F.R. § 532.42(a)(*emphasis added*).

As a result, an inmate only becomes eligible to earn FTCs when he/she arrives at the institution **designated** by the Designation and Sentence Computation Center ("DSCC") for the service of his/her sentence. In this case, Petitioner only became eligible to earn FTCs after he arrived at FPC Pensacola (his designated institution) on 06/05/2024.

It cannot be overstated that arrival to the designated institution is directly linked to the FSA requirement that all sentenced Inmates receive an assessment under the Risk and Needs Assessment System (PATTERN and SPARC-13 assessments detailed above). The PATTERN and SPARC-13 assessments are only completed during the initial admission and orientation phase when the inmate

arrives at the institution **designated** by the DSCC for service of their sentence.[3] Since earning FTCs is an FSA incentive, the eligibility to obtain that incentive is specifically tied to determining "the recidivism risk of each prisoner as part of the designation intake process," "successful participation" in EBRRs and PAs, which are recommended based on the "prisoner's specific criminogenic needs," and periodic reassessments which include the adjustment of assigned programming based on changing needs and risk. See 18 U.S.C. § 3632(a). There is no monitoring of "successful participation in programming" in EBRRS and PAs when an inmate is in a non-designated status (i.e., not at the institution designated for service of his/her sentence) because specific programs cannot be recommended for him/her to take to reduce his/her unique risks and needs since the recommendations are generated from the SPARC-13 and PATTERN assessments.

Petitioner was sentenced on February 14, 2024, and arrived at the institution designated for service of his sentence on June 5, 2024 (i.e., FPC Pensacola). See Exhibit 3, *Inmate History*. Prior to arrival to FPC Pensacola, Petitioner was in temporary **holdover** status from 2/16/2024 – 05/22/2024, while pending transfer to his designated institution. *Id.* An inmate in this type of holdover status (who has not arrived to his/her designated institution) is not provided with the initial risk and

---

3See *Program Statement 5410.01 CN-2, "First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)*" at 8. https://www.bop.gov/policy/progstat/5410.01_cn2.pdf

needs assessment because their length of stay may not be long at the holdover institution – transportation of Inmates is coordinated by JPATS and USMS so an institution will not know how long an inmate will be housed in holdover status there. Following his arrival to his designated facility, FPC Pensacola, Petitioner completed the SPARC-13 and PATTERN assessments, at which time he became eligible to earn FTCs toward early transfer to supervised release and toward time spent in prerelease custody in accordance with the eligibility criteria outlined in the regulations of the First Step Act. See 28 CFR § 523.44.

*General Application of FTCs*

28 C.F.R. § 523.44 outlines the how FTCs may be applied for all eligible Inmates who have earned FTCs during incarceration. In order to be eligible to apply FTCs toward early transfer to supervised release and/or prerelease custody (detailed in subsection (c) and (d)), an inmate must meet the criteria set for in subsection (a):

- be sentenced to a term of imprisonment under the U.S. Code
- not be subject to a final order of removal under immigration laws as defined in 8 U.S.C. 1101(a)(17)
- serving a term of imprisonment pursuant to a conviction for an offense under laws other than the U.S. Code

Petitioner is serving a term of imprisonment under the U.S. Code and is not subject to a final order of removal.

An inmate can apply earned FTCs to time spent in prerelease custody and/or

early transfer to supervised release if he/she meets the criteria in 28 C.F.R. 523.44(c) & (d). Per these sections, an inmate can apply up to 365 FTCs toward early transfer to supervised release and all FTCs earned in excess of the 365, can be applied toward time spent in prerelease custody (e.g, residential reentry center (RRC) or home confinement (HC)).

Under 28 C.F.R. 523.44 (c) **Prerelease custody** –

The BOP may apply earned FTCs toward prerelease custody only when an eligible inmate has, in addition to satisfying the criteria in paragraph (b)4 of this section:

(1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or
(2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that:
  (i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;
  (ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and
  (iii) The prisoner is unlikely to recidivate.

---

4 (b) states in pertinent part, "the Bureau may apply FSA Time Credits toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g) only if an eligible inmate has: (1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment; (2) Shown through the periodic risk reassessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment; and (3) Had the remainder of his or her imposed term of imprisonment computed under applicable law."

Placement in the community is always subject to resource availability and acceptance by the individual Residential Reentry Center (RRC) since RRCs are third-party contract facilities and not operated by the BOP. This has the potential to the amount of FTCs an inmate can apply toward prerelease custody.

Under 28 C.F.R. 523.44 (d) **Transfer to supervised release**.

The BOP may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:

> (1) An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;
> (2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and
> (3) The application of FSA Time Credits would result in transfer to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred.

To summarize the information above, up to 365 days of earned FTCs will be automatically applied toward early transfer to supervised release (resulting in one year off of their Good Conduct Time release date), for Inmates who meet the following criteria:

- Has a term of supervised release to follow the term of incarceration
- Has a low or minimum PATTERN risk level
- Has maintained a low or minimum PATTERN risk level for at least two consecutive assessments conducted during regularly scheduled Program Reviews
- Is not the subject of a final order of removal under immigration

laws, and has not opted out or refused to participate in any required program, and therefore, is in earning status.

All FTCs earned in excess of the 365 FTCs can be applied toward time spent in prerelease custody.

To date, Petitioner has earned sixty (60) FTCs that have been applied to early transfer to supervised release. See Exhibit 2 FSA Time Credit Assessment. Petitioner will continue to earn FTCs for programming throughout his incarceration. Once he has earned 365 days, they will be applied to early transfer to supervised release, while days in excess of 365 days will be applied towards pre-release custody.

## VII. CONCLUSION

The petition should be denied for the reasons stated above.

Attachments:

Exhibit 1 – Declaration of Yvonne Gordon
Exhibit 2 – FSA Time Credit Assessment (12-30-2024)
Exhibit 3 – Inmate History

                        Respectfully submitted,

                        JASON R. COODY
                        United States Attorney

                        */S Lennard B. Register, III*
                        LENNARD B. REGISTER, III
                        Assistant United States Attorney
                        Northern District of Florida
                        Florida Bar No. 264970
                        21 East Garden Street, Ste. 400
                        Pensacola, FL 32502
                        (850) 444-4000
                        len.register@usdoj.gov

## LOCAL RULE 7.1(F)CERTIFICATE

I certify that the above answer to Doc. 2 complies with the length limit set forth in N.D. Fla. Loc. R. 7.1(F). This answer contains 3,977 words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 21, 2025, the foregoing answer was filed electronically with the Clerk of the Court using the CM/ECF filing system and that a true copy will be furnished by U.S. mail to Noel Quintana, Reg. No. 28864-510, FPC Pensacola, P.O. Box 3949, Pensacola, FL 32516.

                        */s Lennard B. Register, III*
                        LENNARD B. REGISTER, III
                        Assistant United States Attorney