IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

NOEL QUINTANA,
    Petitioner,

v.                                          Case No. 3:24cv583-LC-MAL

S. SAULSBERRY,
WARDEN FPC PENSACOLA,
    Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

This cause comes before the court for review of Petitioner's Noel Quintana's § 2241 Habeas Corpus Petition and Informative Motion, and the Respondent's Answer in Opposition. ECF Nos. 2, 7, 9. Because Quintana has not shown that the Bureau of Prisons (BOP) abused its discretion in denying him credit for time served in Montenegro and credits he is entitled to receive under the First Step Act (FSA), I recommend that his petition be denied.

### BACKGROUND

On February 14, 2024, Petitioner Noel Quintana was sentenced in the Southern District of Florida to a term of 57 months of imprisonment, followed by 3 years of supervised release. ECF No. 9-1 at 5-11. The BOP gave Quintana prior

custody credit from October 26, 2022 (the date he was extradited from Montenegro) to February 14, 2024 (the date he was sentenced).[1]

Quintana argues he is entitled to additional credit from June 25, 2021, to October 26, 2022. He contends he was in "official detention" during this time in the country of Montenegro awaiting extradition to the United States, and that he is therefore entitled to credit under 18 U.S.C. § 3585(b). The credit for time in Montenegro is the subject of grounds 1-5 of the petition. ECF No. 2 at 8. In ground 6, Quintana complains that the BOP wrongfully denied him 98 days of FSA eligibility and 30 days of FSA time credits by failing to use February 14, 2024, as the starting date of his sentence for FSA eligibility purposes. *Id.* at 8-9.

## DISCUSSION

**A.  The BOP did not abuse its discretion by denying Quintana credit for time served in Montenegro**.

As required by Title 18, United States Code, Section 3585(b), "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences …." Quintana contends he was in official detention in Montenegro from June 25, 2021

---

[1] This credit is consistent with the sentencing court's order that Petitioner to be given "credit for time served from October 26, 2022." ECF No. 9-1 at 6. It should be noted, however, that the sentencing court does not have authority to award or deny credit for time served. *See United States v. Wilson,* 503 U.S. 329, 333-35 (1992) (ruling that the Attorney General, through the BOP, has the responsibility for calculating credit for time served). This court, therefore, does not give any weight to the sentencing court's order.

to October 26, 2022 because he "was detained in an apartment in Montenegro" and "under police custody for 24 hours." ECF No. 2 at 8. He contends that the order issued by the court in Montenegro contained "absolutely no mention [of] any 'release' or home confinement or any condition of bond or own recognizance …." *Id*. He further contends that even though he was confined to his apartment, he should be given credit. *Id.*

Contrary to Quintana's argument, however, the order from the court in Montenegro specifically imposes "Supervision Measures" and not detention. ECF 2-1 at 10. The court went on to explain that "detention is imposed only if the same purpose may not be achieved by imposing a different measure." *Id.* at 12. The court noted that in Quintana's case, the "risk of fleeing may be prevented by imposing supervision measures such as a prohibition to leave the apartment and temporary seizure of travel documents …." *Id.* The court also warned Quintana "that violation of the … measures may result in imposing detention against [him] …." *Id.* at 11. Under a reasonable reading of the order from the court in Montenegro, Quintana was not detained but instead released with supervision measures.

Quintana argues nevertheless that he was in fact detained and that he was placed in a less secure environment (his apartment) due to "a local lawyers strike, Covid-19 and overcrowding in the detention center in Podgorica …." *Id.* at 8. He

argues that his circumstances are like the circumstances described in BOP Program Statement 5880.28. *Id.* The program statement provides that official detention

> … includes time spent under a <u>detention</u> order when the court has <u>recommended</u> placement in a less secure environment or in a community based program as a condition of presentence detention. In addition, on occasion it is necessary for the court to <u>order</u> placement in a less secure environment or in a community based program … because of overcrowding in the local place of detention. A person under these circumstances remains in 'official detention' *subject to the discretion of the Attorney General and the U.S. Marshals' Service with respect to the place of detention*. Those defendants placed in a program and/or residence as a condition of detention are subject to removal and return to a more secure environment at the discretion of the Attorney General and the U.S. Marshals' Service, and further, remain subject to prosecution for escape from detention for any unauthorized absence from the program/residence. (If there is any question as to whether such a defendant was *in fact under the jurisdiction of the U.S. Marshals' Service, i.e., in the custody of the Attorney General*, staff shall contact the appropriate U.S. Marshal for verification.) Such a defendant is not eligible for any credits while <u>released</u> from detention.

PS 5880.28 at 1 - 14F (underlining in original, italics added).

This program statement by its terms does not apply to Quintana because Quintana was not in detention "subject to the discretion of the Attorney General and the U.S. Marshals' Service with respect to the place of detention" and he was not "in fact under the jurisdiction of the U.S. Marshals' Service, i.e., in the custody of the Attorney General" *Id.* Quintana was instead subject to supervision measures in Montenegro.

The BOP's denial of credit to Quintana is consistent with other portions of its program statement which explain that "a release condition that is 'highly restrictive'

and includes 'house arrest', 'electronic monitoring', or 'home confinement'; or such as requiring the defendant to report daily to the U.S. Marshal, U.S. Probation Service, or other person; is not considered as time in official detention." *Id.* at 1-14G-H. Quintana's supervisory measures in Montenegro are consistent with release conditions and are reasonably deemed not to be official detention.

Quintana has failed to show that the BOP's determination that he was not in official detention is arbitrary, capricious, or otherwise an abuse of discretion. Relief should therefore be denied.

  **B.** **Quintana's FSA argument fails because he does not allege he successfully completed FSA evidence-based recidivism reduction programming from February 14, 2024, to May 22, 2024, to earn FSA credits.**

Quintana was sentenced on February 14, 2024. He stayed in temporary holdover status at FDC Miami for 98 days until May 22, 2024. ECF No. 2 at 8, ECF No. 9 at 14. He was then transported to his designated institution (FPC Pensacola), arriving on June 5, 2024. ECF 2 at 8.

Quintana contends the BOP wrongfully deemed him ineligible to earn FSA credits during the 98 days he stayed at FDC Miami. Quintana does not state that he successfully participated in FSA programing during this time. He states instead that he "never refused to participate in any programming that was available to [him]" and that he "participated in faith-based services." *Id.* at 9.

Under the FSA, an eligible inmate who "successfully participates" in evidence-based recidivism reduction (EBRR) programs or productive activities earns time credits to be applied toward placement in prerelease custody (such as a residential reentry center, commonly known as an RRC or halfway house, or home confinement) or toward early release to a term of supervised release. See 18 U.S.C. §§ 3624(g)(1)-(3), 3632(d)(4). Inmates initially earn ten days of time credits for every 30 days of successful participation in EBRR programs or productive activities. 18 U.S.C. § 3632(d)(4)(A)(i). Prisoners who are determined by the BOP to be at a minimum or low risk for recidivating, and who, over two consecutive assessments have not increased their risk of recidivism, earn an additional five days of time credits for every 30 days of successful programming. 18 U.S.C. § 3632(d)(4)(A)(ii).

The FSA specifies that prisoners may not earn credits for completion of programs before the FSA's enactment or "during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." 18 U.S.C. § 3632(d)(4)(B)(ii). Section 3585(a) provides that an inmate's sentence begins when he or she "is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a) (emphasis supplied). Thus, under the statutes, an inmate in not prohibited from earning FSA credit after sentencing while in custody awaiting transport to a designated facility.

In contrast, the BOP's administrative rule, 28 C.F.R. § 523.42(a) provides that "[a]n eligible inmate begins earning FSA Time Credits after … the inmate arrives … at the designated Bureau of Prisons facility where the sentence will be served." Thus, the BOP's regulation excludes time in custody after sentencing but prior to the prisoner's arrival at the designated facility from eligibility to earn FSA credits, while the statutes do not.

Quintana argues that he was eligible to begin earning FSA time credits when he was sentenced, and the BOP's argument to the contrary based on 28 C.F.R. 523.42(a) is in error. The Court agrees with Quintana and the persuasive reasoning of other courts. See, e.g., *Harris v. Warden, FCI Leavenworth*, No. 25-3006-JWL, 2025 WL 1067634, at *1 (D. Kan. Apr. 9, 2025) (BOP cannot rely on 28 C.F.R. 523.42(a) to deny credit for FSA programming completed prior to arrival at designated facility).

The inquiry does not end there, however. Even if Quintana was eligible to earn credits at the time of sentencing, he does not allege that he "successfully completed" any FSA programming during the period in question. Under section 3632(d)(4)(A), earning credits requires that the prisoner "successfully completes evidence-based recidivism reduction programing or productive activities." 18 U.S.C. § 3632(d)(4)(A) (emphasis added). Quintana is entitled to receive FSA credits only if he has successfully completed EBRR programing or productive activities during that

time. *See Dunlap v. Warden FMC Devens,* No. 24-CV-11462-RGS, 2024 WL 5285006, at *8, *10 (D. Mass. Dec. 13, 2024), report and recommendation adopted, No. CV 24-11462-RGS, 2025 WL 35248 (D. Mass. Jan. 6, 2025) (holding that denial of credits for periods when the inmate was unable to participate in programing did not conflict with the plain meaning of the FSA, and noting that the BOP's inconsistent system of granting time credits to prisoners without regard to actual participation does not mean the FSA creates an entitlement to receive credits under such circumstances); *Harris* at *3 (denying FSA credit because the petitioner failed to allege completion of EBRR programming prior to arrival at the designated facility).

This court agrees that "under any reasonable interpretation, the FSA mandates credits only for successful completion of EBRR programming and productive activities that have been determined as appropriate and assigned to the prisoner in accordance with the particularized assessment of the prisoner's risk of recidivism." *Harris*, at *2. Because Quintana does not claim that he participated in any EBRR programming prior to his arrival at his designated facility, he has not shown he is entitled to additional credits. Relief as to this matter should therefore be denied.

## CONCLUSION

Quintana has not shown that the BOP abused its discretion by denying him credit for time in Montenegro. Quintana has not shown that he is entitled to

additional FSA credits for the time period of February 14, 2024 to May 5, 2024.

Accordingly, it is **ORDERED**:

Quintana's "Motion for Status" (ECF No. 11) and "Emergency Motion for Expedited Ruling" (ECF No. 12) are denied as moot due to the entry of this recommendation.

And, it is respectfully **RECOMMENDED**:

1. Quintana's petition under 28 U.S.C. § 2241 (ECF No. 2) be DENIED.

2. The clerk be directed to close the case file.

DONE on May 20, 2025.

*s/ Midori A. Lowry*
Midori A. Lowry
United States Magistrate Judge

### NOTICE TO THE PARTIES

The case was referred to me for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.